## Samuel Hess, Thos. N. Reid and others, *vs.* Thos. Poultney and David U Brown.

The notice from the material-man to the owner, under the mechanics lien law of 1845, ch. 176, sec. 1, must state, as the act requires, the claimant's *"intention to claim the benefit of the lien,"* and the omission of this in the notice is a *fatal* defect.

Though the lien laws are to be construed independently of the rule requiring a strict interpretation of all acts in derogation of the common law, still the words of the law must be *substantially* complied with.

Appeal from the Superior Court of Baltimore city.

A. *scire facias*, under the mechanics lien laws, was issued at the instance of the appellees, from the court below, on the 1st of June 1852, reciting that the appellees, trading under the firm and style of "*Brown and Poultney*," on the 15th of May 1852, filed in said court a claim against *Samuel Hess*, for the sum of $876.10, against a certain lot of ground, particularly described, on Portland street in the city of Baltimore, improved by the erection of nineteen houses thereon, for work

33      v.10

and labor, and materials furnished in and upon said houses, as per statement filed, and that afterwards, on the 25th of May 1852, the claimants amended their original lien, making Thos. N. Reid, Henry S. Taylor and John D. Reid, defendants, having understood that they were owners or reputed owners of the lot and houses, upon each of which they claim a lien for work and labor done, and materials furnished to the amount of $46.12½, respectively. The writ then commands the sheriff to make known to the said Samuel Hess, Thos. N. Reid, Henry S. Taylor and John D. Reid, and to all persons holding and occupying the buildings, to appear and show cause why the said sum of $876.10, should not be levied of said buildings.

The sheriff returned the writ, "copies set up on the most conspicuous part of the premises, and made known to the defendants, and advertised according to law as per advertisement hereto annexed." All the defendants named in the writ appeared and filed a plea, denying that the plaintiffs furnished the materials as charged in their claim, upon which issue was joined.

*Exception.* The plaintiffs offered in evidence their original and amended claims for lien, filed at the respective dates mentioned in the writ. The *original* claim is *entitled* as against *Samuel Hess,* and states that the plaintiffs, "copartners, trading under the firm and style of Brown and Poultney, claim the sum of $876.10, against a certain lot of ground," (which is there particularly described as situated on Portland street,) "improved by the erection of nineteen houses," (whose dimensions are also particularly given,) "for work and labor and materials furnished in and upon said houses, as per statement filed as part of this lien," and directs the clerk "to file and record the above as a lien, as well against the houses and lot aforesaid, as against Samuel Hess the owner or reputed owner thereof, according to the provisions of the act of Assembly in such case made and provided." The statement referred to in this claim, and annexed to it, is an account headed, "Mr. Samuel Hess to Brown and Poultney Dr.," and consists of various charges for items of hardware, such as hinges, latches, locks,

screws, nails, &c., commencing on the 2nd of January 1851, and ending on the 24th of April 1852, and amounting to $876.10. The *amended* claim is *entitled* as against Samuel Hess, Thos. N. Reid, Henry S. Taylor and John D. Reid, and after referring to the filing of the original lien, states that the plaintiffs have since understood "that Thos. N. Reid, Henry S. Taylor and John D. Reid, are also the owners or reputed owners of the said lots of ground and houses thereon erected, upon each of which said houses they claim a lien for work and labor, and materials furnished, to the amount of $46.12½ respectively," and directs the clerk "to file and record the above, as well against the houses and lots aforesaid as against Thos. N. Reid, Henry S. Taylor and John D. Reid, the owners or reputed owners thereof, according to the provisions of the act of Assembly in such case made and provided, as per statement filed as part of this lien." There was an entry of satisfaction on the lien docket as to the 11th house.

The plaintiffs then proved by their clerks, that the goods mentioned in the claim were sold by them to Samuel Hess, and were delivered at the times and periods named in said bill, some to Samuel Hess, some to his workmen, and that some were sent from the plaintiffs' store by drays, the draymen being directed to take them to houses on Portland street, and that it was the understanding between the plaintiff and Hess, that the goods so delivered were for the Portland street houses, named in the said lien. They further offered the letter dated May 15th 1852, and post-marked may 18th, and directed to "Henry S. Taylor firm of ——," which is set out in the opinion of this court.

The defendants then offered in evidence the book of *original entries* produced by the plaintiffs, in which the articles mentioned in the lien were charged. In the first item, of date January 2nd, 1852, are the words ("in Pratt above Green street,") this and all the other charges being against Samuel Hess alone. It was proved that the words above quoted, were inserted by one of the plaintiffs' clerks by the direction of the other, as the place to which the items charged in the entry were to be delivered, because the houses in Portland street

were not then in a condition to receive the goods. It was fur-
ther proved, that these houses were not completed until the
spring of 1852. The defendants further offered in evidence
a contract for the building of these houses, between John D.
Reid and Henry S. Taylor, of the one part, and Samuel Hess,
as contractor, of the other part, dated the 28th of March 1851,
and then asked the following instructions to the jury:

1st. That there is no sufficient evidence in the case, to es-
tablish such notice to the defendants, of the claim for lien set
up by the plaintiffs, to enable them to recover in this action:—
1st, because the notice was not directed to the reputed owners;
2nd, because it did not contain the statement of the kind of
materials furnished, nor the amount claimed to be due; 3rd,
because it referred to a claim, for a lien to have been filed at
a period when no such lien had been left for record in the
clerk's office; 4th, because it was not specific and definite as
required by the lien laws; and 5th, because the plaintiffs in
said notice, did not state that they intended to claim the benefit
of the lien given by the acts of Assembly.

2nd. That if the jury believe from the evidence, that the
materials charged in the claim were furnished on the credit
and individual liability of Hess, and not on the credit of the
buildings, the plaintiffs are not entitled to recover.

3rd. If they believe from the evidence, there was no more
than $25 to $30 worth of hardware, used or furnished in the
erection or construction of the eighteen houses, the plaintiffs
are not entitled to recover more than such amount upon each
house.

4th. That there is no evidence in the case, upon which the
plaintiffs can recover for the goods alleged to have been deliv-
ered prior to March 28th, 1851, the date of the contract between
Hess and Reid and Taylor.

The plaintiffs then asked the following instructions:—1st,
If the jury believe from the evidence, that the articles named
in the bill attached to the lien filed in this case, were furnished
to the houses and lots named in the lien, at the instance of
Hess as contractor, that the lien was filed within six months
of the furnishing of the articles, for record in the proper office,

that a notice of the same was properly served on the owner or reputed owners of the property, then the plaintiffs are entitled to recover, although the jury should also believe, that a part of the articles were furnished prior to the date of the contract of the 28th of March 1851.

2nd. If the jury find the facts stated in the first prayer, then the plaintiffs are entitled to recover, though the jury should also believe a part of the articles were furnished, prior to the date of the contract, of the 28th of March 1851, provided they find that this part was so furnished for said houses, Hess being at the time contractor.

3rd. If the jury believe from the evidence, that the articles named in the bill attached to the lien filed in this case, were furnished to the houses and lots named in the lien, at the instance of Hess as contractor, that the lien was filed for record in the proper office, on the 15th of May 1852, and that notice thereof was given to the owners or owner of the property, by letter postmarked the 18th of May 1852, as offered in evidence, then the plaintiffs are entitled to recover, for all the materials furnished under such contract.

4th. If the jury believe from the evidence, that the articles named in the bill attached to the lien filed in this case, were furnished to the extent of $46.12$\frac{1}{2}$, as stated in the lien to Hess, on the house situated on the corner of Portland and Emory streets, and that the lien was filed within six months from the delivery of the articles, then the plaintiffs are entitled to recover, to the extent of this sum on the said property embraced in the lien filed.

The court (FRICK J.) granted the defendants' *second* and *third* prayers, but refused their *first* and *fourth,* and granted all of the plaintiffs' prayers. To this refusal and the granting of the plaintiffs' prayers, the defendants excepted, and the verdict and judgment being against them appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, TUCK and MASON, J.

*William Pinkney White* for the appellants, argued:

1st. That the defendants' *first* prayer ought to have been granted. While the act of 1845, ch. 287, requires the original lien law and its supplements to be construed as remedial laws, still no court has ever said that the *requirements* of these laws are to be *dispensed with*. The contrary is expressly held in 5 *Md. Rep.*. 422, *Kees vs. Kerney.* In this case the acts of 1838, ch. 205, and 1845, ch. 176, sec. 1, were not followed as far as the *notice* from the material-man to the *owner* is concerned:—1st, the notice was not directed to the *"owner or owners,"* nor was it properly *served.* The rule of law in regard to notice to parties where they do *not occupy the position of partners,* is fully ssated in 1 *Amer. Lead. Cases,* 259, 327. In such cases notice to one is not notice to the other, and the service of notice on one is not presumed to be a service on the other. But even if Reid had heard there was a notice in the hands of his co-defendant Taylor, would this be sufficient to bind him, when the law requires that the notice shall be *"in writing?"* The notice given should be clear and explicit, stating the names of the owners, and should·be directed to and served upon *each owner.* 2nd. It did not state as it should, the kind of materials furnished and the *amount claimed to be due.* The object of the Legislature was to advise the owner of claim for materials and the *amount,* that he may protect himself in settling with his *contractor.* That such is the meaning of the law, is clear from the 8th section of the act of 1845, ch. 287, which empowers the owner who has received proper notice under the act of 1845, ch. 176, to retain from the cost of the building *"the amount which he may ascertain to be due to the party giving such notice."* How is he to ascertain the *amount,* unless it be specified in the *notice?* That I am right in this view of the law, is apparent from the act of 1846, ch. 290, extending the lien laws to Washington county, the 4th section of which requires the material-man to give notice to the owner, *"of the amount due him, and whether for work done or materials furnished."* 3rd. The letter which it is sought to metamorphose into a notice, instead of stating as required by law, that the plaintiffs *intended to claim* the benefit of the

lien, actually *waives* the right to such lien. The act of 1845, ch. 176, sec. 1, not only requires the notice to be given in writing, but that it shall contain the declaration of the material-man, *that he intends "to claim the benefit of the lien."* In all notices regulated by statutory enactment, the provisions of the statute must be strictly complied with. 7 *Md. Rep.*, 27, *Rawlings vs. Adams,* 4 *Do.*, 304, *Greenway vs. Turner.*

2nd. The defendants' fourth prayer should also have been granted, because there was no evidence to show any contract between Hess as contractor, and Reid and Taylor as owners, prior to the 28th of March 1851. It was the duty of the plaintiffs to advise themselves of the contract between the parties. It was their business to know when an actual contract was made. 4 *Md. Rep.*, 303, *Greenway vs. Turner.* The goods furnished prior to the date of this contract, were all furnished to Hess alone, and were not delivered at or near the buildings, but *"in Pratt above Green street."* The contract in writing was the proof in the case, showing the relation of contractor and owner. 11 *Barbour,* 13, *McDermott vs. Palmer.*

3rd. The plaintiffs' prayers ought not to have been granted, They conflicted with these already granted to the defendants, and contained instructions, to sustain which there *was no proof*. They ought not to recover under the decision in *Phillips vs. Duncan,* 3 *Law Reg.*, 305, for any goods delivered more than six months prior to the filing of the lien. 1 *Sergt. Lien Law, (2 Ed.,)* 173, 174, 175. The case in 3 *Md. Rep.*, 170, does not conflict with the decision in *Phillips vs. Duncan.* In that case there was a special contract for all the lumber to be used in the buildings, and the question, whether, where lumber so furnished to several buildings, and used in all of them *but one,* more than six months before filing the lien, but *used* in the last within the six months, a lien could be sustained against all? But in this case eighteen of the buildings were owned by one person, and the nineteenth was owned by another, and there was no proof as to the house to which the hardware last furnished was delivered. If it was delivered to Hess' *own house* within six months, but not to any of the eighteen within that time, could the lien be sustained? And

is it not incumbent on the plaintiffs to show, that within sixty days of the date of their notice, hardware had been delivered to some of the eighteen houses owned by Reid and Taylor? There is no such proof in the case. Their last prayer was clearly erroneous, for if one of the houses claimed in the joint lien to be covered by the lien, was owned by a *different person* than the owners of the eighteen houses, the plaintiffs could not recover under a joint claim, in which they had apportioned their whole bill. The law does not allow a joint claim against property owned by separate and distinct parties. 6 *Sergt. & Rawle*, 521, *George vs. Douglas*. *Sergt. Lien Law*, (2 *Ed.*,) 249, 255. The act of 1838, ch. 205, sec. 12, only allows an apportionment where all the buildings are owned by the *same* person, and the act of 1845, ch. 287, allowing the docketing of several *sci. fas.*, is a privilege granted to persons who become interested *after* the lien is laid, in accordance with the 12th section of the act of 1838, ch. 205, and is intended to apply to *purchasers* from owners.

*I. N. Steele* for the appellees, argued:

1st. That the notice to the owners offered in evidence by the plaintiffs was sufficient to sustain the lien. By the express terms of the act of 1845, ch. 287, sec. 1, these lien laws are to have the same *effect* as acts *"which confer a general jurisdiction or are remedial in their nature."* All that the law demands therefore is a *substantial* compliance with its requirements. Now, the objections urged against this notice are purely *technical*. 1st. It is objected *first*, that the notice was not properly *directed* and *served*. The law does not require the notice to be *directed* to *any one*. It says, notice shall be *given* to the owners, and if the three owners were standing together, and notice not directed to any *one*, reached them all, or if there was evidence that it *probably did reach them*, it is enough. No *personal* service is required. The question then is, whether giving notice to one *joint owner* is evidence of notice to *both?* The word *"owner,"* only is used in the act of 1838, and the word *"owners"* in the act of 1845, was put in *ex abundanti cautela* for the purpose of supplying a sup-

posed *casus omissus*.  It means the *same thing:* the *"owner"* is the party for whom the house *is built*, and is the correlative of *contractor*.  11 *Barbour*, 13.  Now, we insist upon these two propositions.  1st.  That where several joint-owners of real estate contract for the building of houses thereon, notice to one is notice to all under our lien laws.  2nd.  That *service* upon one of such joint owners is *evidence* of notice to all until disproved.  The defendants stand here as *joint owners and contractors*.  Where parties have a joint interest an *admission* of one is the admission of both, and so the *knowledge* of one is the knowledge of both.  1 *Greenlf. on Ev. sec.*, 174.  The same principle applies to all cases where the parties have this *identity* of *interest*.  Notice to the party *not sued* will bind him who *is sued*, the contract being joint.  1 *Wend.*, 50, *Bartlett vs. Campbell*.  15 *Maine* 9, *Holbrook vs. Holbrook*. Notice to quit, to one of two joint tenants is notice to both. Notice put in the hands of one of two joint contractors is evidence from which a jury could infer, that it reached the other.  7 *East.*, 553, *Doe vs. Watkins*.  Delivery of notice to a *servant* is strong presumptive evidence, that it reached the *master*, and leaving notice at the house is sufficient even where the Legislature has said, that before a party shall be affected, notice shall be *given*.  4 *Term Rep.*, 465, *Jones vs. Marsh*.  Notice to one of two tenants is sufficient even by *parol*, where they appear to hold the land jointly.  5 *Esp.*, 197, *Doe vs. Crick*.  We had abundant evidence to go to the jury to show, that the notice *was given* within the meaning of the act.  It was required to be given *in writing* to avoid frauds and perjuries, and we gave it in writing.  In the absence of evidence, that it did *not* reach the other party the evidence is conclusive that it did.  The notice was produced at *the trial* by the *defendants*, that is by *both of them*.  Again, the *sci. fa.* issued twenty-three days before the expiration of the time within which we could have given notice, and this was notice in the highest form, giving all the particulars. 2nd.  It is next objected, that it does not state the *kind* of materials furnished and the *amount claimed*.  The act of Assembly does not require a statement of the kind of materials

or of the *amount claimed* to be in the *notice*. It says, that within sixty days after "doing the work or furnishing the materials," notice "*of the same*" shall be given, that is that the work is done or the materials are furnished to the building. It is only when the *lien* is filed, that the *particulars* of the claim must be stated. But in this case if Taylor, after receiving this letter, had gone to the clerk's office, he would have found the lien filed containing all the *items* of our claim. That which puts a party upon inquiry, is *notice* of that which he would learn upon inquiry. 1 *Md. Rep.*, 403, *Price vs. McDonald.* But it is not necessary that this particularity should be observed. 6 *Binney*, 83, *Litle vs. Toland.* 3rd. Another objection is, that the notice does not state the *intention to claim the benefit* of the lien. But the *lien* had been *already filed,* and the letter informs the owner of that *fact,* and it was of course useless to tell the owner that he *intended* to do what he had *already done.* The information that the lien was filed is certainly notice, that the party filing it intended to claim the benefit of it.

2nd. The defendants' *fourth* prayer asserts, that there is *no evidence* upon which the plaintiff's can recover for goods furnished prior to the 28th of March 1851. This is always a delicate question for an appellate court, and can only be solved by an examination of the record. The evidence here is the same that is always presented in such cases. Hess bought the materials *for the houses,* they went into the houses, and the houses were owned by *the defendants.* This is evidence from which the jury may infer, that the materials were furnished under a *verbal contract,* and that at the time he purchased them, Hess was the *builder,* and if so, there was a *subsisting contract* within the meaning of the decision in *Greenway vs. Turner.* This removes the objection to our first three prayers that there was no evidence that Hess was contractor. The case of *Duncan vs. Phillips* in regard to the limitations of six months is not law in this State. The contrary is expressly decided in 3 *Md. Rep.*, 176, *Okisko Co. vs. Matthews.* See also, 16 *Missouri*, 256, *Carson et al. vs. Steamboat Daniel Hillman.* 9 *Do.*, 558, *Stine vs. Austin.* Any other con-

struction requiring a separate lien to be filed in each case within six months would put it in the power of lienors to consume, by the costs of such liens, the entire value of the house.

3rd. Our fourth prayer was asked upon the supposition, that Hess was the *owner* of the particular house therein referred to. The objection now urged to this prayer was not made in the court below. They never called upon the court to have *separate* cases docketed, and it is too late now to set up such a defence.

LE GRAND, C. J., delivered the opinion of this court.

This is a proceeding under the lien law of 1838, chapter 205, and its various supplements. The facts may be thus stated. On the first day of June 1852, a *scire facias* was issued against nineteen houses erected in Baltimore city, on Portland street, and belonging to Henry S. Taylor and John O. Reid, for materials alleged to have been furnished to the said houses, at the instance of Samuel Hess, the contractor. There were two liens laid, one of which was against Hess alone, and was left for record at the clerk's office on the 15*th day of May* 1852. The second claim for lien against Taylor and others, was filed on the 25th day of May 1852. The record shows, that a contract for the building of the houses was entered into between Taylor, Hess and Reid, on the 28th day of March 1851. The account for materials furnished commenced in January of the same year. On the 15th day of May 1852, S. H. Tagart, counsel of the plaintiffs, gave the following notice to Henry O. Taylor, one of the owners of the houses: "Dear sir:—On Saturday last, I laid a lien on a lot of ground on Portland street, on account of materials furnished in the erection of the houses on said lot, by Messrs. Brown and Poultney. I have learned since, that you had an interest in this property, and I shall not, of course, issue a *sci. fa.* until I see you upon the subject." This letter was postmarked the 18th of May 1852, and was evidently erroneously dated. It states, that the lien had been laid on the *Saturday preceding*, when in fact it was laid on the 15th day of May.

On this state of facts the defendant offered four prayers, the

second and third of which were granted, and the first and fourth rejected. The plaintiff offered several prayers, all of which were granted.

We think the court erred in the rejection of the defendants' first prayer, which, in its nature, was conclusive of the case. We hold the notice to be insufficient under the first section of the act of 1845, chapter 176. That section requires not only that notice should be given of the claim, but also, *"of his, her or their* (claimants') *intention to claim the benefit of the lien.'* Whatever else may be said of the notice the omission of this compliance with the requirements makes it insufficient.

Although the lien laws are to be construed independently of the rule of the common law which requires all acts in derogation of it to be interpreted strictly, nevertheless the words of the law must be substantially complied with, and in a case like this, where the precise words are furnished by the statute and are *wholly* omitted, the omission is fatal.

<div align="right">

*Judgment reversed and procedendo refused.*