## WINIFRED B. FULTON ET AL. *vs.* PARLETT & PARLETT.

*Mechanics' Lien—Requisites of Notice of Claim to Owner—Apportionment of Amount Claimed to Different Buildings—Designation of Boundaries of Land Subject to Lien.*

A notice to the owner of land by a party who has furnished materials to a contractor erecting a building on the land that such material man "claims and will forthwith file" a mechanics' lien claim for such materials is valid and sufficient under Code, Art. 63, sec. 11, which provides that under such circumstances the person furnishing materials shall not be entitled to a lien unless he shall give notice to the owner of the land "of his intention to claim such lien." The notice that the lien is claimed is equivalent to notice of an intention to claim it.

When materials have been furnished for a building erected on land belonging to a married woman under a contract made by her husband with a builder, it is not necessary, under Code, Art. 63, sec. 19, that the notice of a lien claim by the material man to the married woman should set forth that the builder, who bought from the claimant, was employed by the married woman.

A contract with a builder provided for the erection on the same parcel of land of a dwelling-house, a stable and a duck-house. The contractors purchased materials for all the buildings under one entire and continuous contract and the material man did not know what portion of the materials were designed for the different buildings. *Held*, that the lien claim for materials is not invalid because it does not designate the amount claimed to be due on each of the buildings.

Materials were furnished by the plaintiff to a contractor for the erection of a dwelling-house and two out buildings on a lot of ground containing six acres. The owner of the lot was also seised of a contiguous parcel of land containing about two-thirds of an acre. Under a bill to enforce a mechanics' lien in favor of a material man the lower Court directed the sale of the six-acre lot. The owner had not designated any boundaries prior to the commencement of the work, as is authorised by Code, Art. 63, sec. 5; nor did the owner or the lien claimant file a petition to have the boundaries defined in the manner prescribed in sec. 7, or in that prescribed by section 8. *Held*, that the owner must be held to have waived all objection to the decree founded on the omission to demark the boundaries of the land.

When a party owns two adjoining lots of ground on one of which build-

ings are erected, and the other lot is not necessary for the ordinary purposes of the buildings, it is proper, in decreeing a sale of the lot on which the buildings are erected to enforce a mechanics' lien, not to include the adjoiniag lot.

*Decided June 15th, 1906.*

Cross appeals from the Circuit Court for Anne Arundel County (REVELL and THOMAS, JJ.)

The cause was argued before McSHERRY, C. J., BRISCOE' BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*James R. Brashears*, for W. B. Fulton *et al.*

*Frank H. Stockett*, for Parlett & Parlett.

McSHERRY, C. J., delivered the opinion of the Court.

This is a mechanics' lien case. Cross appeals were taken from a decree of the Circuit Court for Anne Arundel County by the owner of the property affected by the lien and by the material men who filed the bill in equity upon which the decree was passed. The decree sustained the lien claim and appointed trustees to sell a portion of the real estate described in the proceedings. From that decree the owner appealed and has assigned in this Court four reasons for its reversal. Those reasons are: First, that the notice given by the material men to the owner is defective because it failed to state that the claimants *intended* to claim a mechanics' lien and omitted to aver that the contractors had been employed by the owner; secondly, that the lien claim is defective because the itemized account does not show for which of the three several buildings that were erected the different parcels of materials furnished were designed; thirdly, that more land was decreed to be sold than was necessary for the ordinary and useful needs and purposes of the buildings; and fourthly, that the decree erroneously directed the claims of several lienors to be paid out of the proceeds of sale though they were not plaintiffs but had duly filed claims in the Clerk's office and were made

defendants, in the equity proceedings. The appeal taken by the plaintiffs assails the decree because all the land owned by the defendant, Mrs. Fulton, was not adjudged to be sold. Before discussing these various contentions a brief outline of the facts must be given.

On September the ninth, 1903, Henry S. Mancha and others conveyed to Winifred B. Fulton a small lot of ground containing about sixty-five one-hundredths of an acre, situated one and three-quarter miles from Annapolis. On September the fifteenth of the same year John T. Wilkinson and others conveyed to the same Winifred B. Fulton a parcel of land containing about six acres adjoining the first named lot. On the first day of October, 1903, Edward M. Fulton, the husband of Winifred B. Fulton, entered into a written contract with Wells & Ward by which the latter agreed to erect and complete for him a two-story frame cottage on the six-acre lot of his wife and to furnish all the labor and material necessary therefor in consideration of the sum of twenty-nine hundred and eighty-dollars. At the same time, though the date does not definitely appear, but undoubtedly it was just before or as the work was begun on the house, Mr. Fulton entered into a verbal agreement with Wells & Ward to erect for him on the same property a stable to cost one hundred and seventy-five dollars and a duck-house for which no price was stipulated, but which cost "about two hundred and fifty or three hundred dollars." The contractors procured much of the materials as they were needed for all three structures from Parlett & Parlett, and the latter began furnishing those materials on October the third and finished on December the first, the deliveries being continuous and almost daily. All of the materials so furnished by them went into the three buildings, but were not ordered specifically for the separate buildings, and the itemized account appended to the lien claim does not indicate what parts of the materials were used in the different structures. They were all furnished under one continuous contract with the builders. On December the thirty-first, 1903, Parlett & Parlett duly served upon Mrs. Fulton,

the owner of the land, a written notice informing her that they "claim and shall forthwith file their claim in the office of the Clerk of the Circuit Court for Anne Arundel County * * * their lien in the nature of mechanics' lien under the provisions of Art. 63, Code of Public General Laws" in the sum of thirteen hundred and seventy-eight dollars and forty cents for materials furnished Wells & Ward contractors and used by them "in and about the building and erection of your dwelling and outbuildings" on the lots or parcels of land conveyed by the deeds that have already been referred to. On the same day the claim for a mechanics' lien was duly filed in the office of the Clerk of the Circuit Court for Anne Arundel County. On March 28th, 1904, the bill of complaint now before us for the enforcement of the lien was filed. On this state of facts the questions which are involved and which have been mentioned above, have arisen.

*First.* Was the notice given by Parlett & Parlett to Mrs. Fulton defective because it failed to state that the lienors *intended* to claim a mechanics' lien, and omitted to aver distinctly that Wells & Ward were contractors who had been employed by Mrs. Fulton to erect the buildings? The objections to the decree embodied in the above inquiry are founded on secs. 11 and 19 of Art. 63 of the Code of 1904. By *sec. 11* it is provided that if the contract for furnishing work or materials shall have been made with a builder or with any other person except the owner of the land on which the building is to be erected or his agent the person so doing work or furnishing materials, "shall not be entitled to a lien unless within sixty days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien." The notice actually given, as hereinbefore pointed out, advised Mrs. Fulton that Parlett & Parlett "claim and shall forthwith file their claim" of a mechanics' lien in the office of the Clerk of the Circuit Court; but because it omitted to say that the lienors *intended* to claim such a lien it is alleged to be defective. This contention is founded on a very

narrow and literal interpretation of the words of *sec. 11* without the least reference to the purpose which the enactment was designed to subserve. The notice prescribed by *sec. 11* of an intention to claim a lien is required to be given to the owner by the material man to enable the owner to retain under *sec. 13* from the amount due to the contractor or builder the sum which the contractor or builder may owe to the material man, and any phraseology which clearly and distinctly apprises the owner of the intention of the material man to claim the lien will gratify the terms of the section and effectuate its design though the word intention be not used at all. A notice that the material men "claim and shall forthwith file" a mechanics' lien claim under Art. 63 of the Code is quite as definite in respect to the intention of the material man to claim the lien as would have been a notice couched in the precise language of the section. It is difficult to perceive how one can declare that he claims and shall forthwith file a mechanics' lien unless he means by that declaration that it is his intention to claim such a lien. The intention to claim a lien could not be more definitely expressed than by the statement that the lien *is* claimed and will be forthwith filed. The owner was just as fully informed by the notice given that the claimants intended to file a lien claim, as she would have been had the notice specifically stated that it was the intention of the lienors to claim such a lien. The cases cited by the appellants' counsel do not support their contention because the facts in those cases are radically different from the facts in this case. In *Hess, Reid et al* v. *Poultney & Brown,* 10 Md. 257, the notice consisted of a letter addressed by the counsel of the material man to one of the owners wherein the latter was informed that a lien had been laid but neither the amount claimed nor the kind of materials furnished was mentioned and in conclusion the writer stated: "I have learned since, that you had an interest in this property, and I shall not, of course, issue a *sci. fa.* until I see you upon the subject." The notice was held insufficient because among other reasons it omitted to state the lienor's intention to claim the benefit of the lien.

The Court said: "Although the lien laws are to be construed independently of the rule of the common law which requires all acts in derogation of it to be interpreted strictly, nevertheless the words of the law must be substantially complied with, and in a case like this where the precise words are furnished by the statute and are *wholly* omitted, the omission is fatal." In the case at bar there has been a substantial compliance with the requirements of the section and such a compliance is all that is requisite. In *Thomas* v. *Barber & Barber*, 10 Md. 380, the notice was held to be defective because it gave no description of the materials furnished, was silent as to the amount claimed and made no reference to a claim filed. In *Trustees, &c.*, v. *Heise & Bruns*, 44 Md. 453, a notice was ruled to be insufficient because it failed to state what the claim was for—whether work or materials.

But there is a still more conclusive answer to the contention of the appellants, and that answer is to be found in *sec. 10 of Art. 63 of the Code*. That section declares: "Where a building shall be erected on a lot of ground belonging to a married woman by her husband or some person by him employed, the said lien shall not attach unless notice thereof be given to such married woman in writing within sixty days after doing such work or furnishing such materials or both, as the case may be." The facts disclosed by the record bring the case at bar directly within the above quoted section. The land belonged to Mrs. Fulton. The house and outbuildings were contracted for by her husband. He was to pay for them himself and then to present them to his wife. He did not act as her agent or for her in contracting for the erection of the buildings. In these circumstances the notice was required to be given to her and that was done. Now this section does not contain the word "intention" as sec. 11 does; and hence even if a strict adherence to the words of the statute were necessary in the notice which the tenth section requires, there would be no occasion to include in the notice given thereunder a declaration of an *intention* to claim the lien. A notice that the lien *is* claimed and would be forthwith filed would fully and exactly comply with the provisions of the tenth section.

Sections 10 and 11 were adopted at different times. The whole mechanics' lien law system as first enacted was a local measure applicable only to Baltimore City. *Act of 1838, ch. 205.* By various subsequent statutes it together with its numerous supplements was extended to many of the counties and finally was incorporated in Article 61 of the Code of Public General Laws of 1860. Now, section 11 of Art. 63 .of the Code of 1904, being also section 11 of Article 61 of the Code of 1860 was taken from the proviso contained in *sec. 9 of ch. 205 of the Acts of 1838* as amended by the proviso in *sec. 1 of ch. 176* of the Acts of 1845, and as originally enacted and afterwards amended did not in terms apply to a situation which was later on covered by a part of *sec. 7, ch. 287 of the Acts of 1845,* now forming *sec. 10 of Art. 63* of the Code of 1904—that situation being the instance of a husband building on his own account and not as the agent of his wife, upon real estate owned by her. Section *10 of Art. 63* of the Code follows the wording of a part of *sec. 7 of ch. 287* of the Acts of 1845, and in neither is the notice which is directed to be given to the wife required to be a notice of an *intention* to claim a lien, whilst under *sec. 11* and the antecedent Acts from which it was transcribed the notice prescribed in the wholly different contingencies therein embraced must indicate an intention to claim the lien.

But little need be said with respect to the objection founded on *sec. 19 of Art. 63 of the Code.* That objection is that the notice does not state in clear and express terms that Wells & Ward were the contractors employed by Mrs. Fulton. The case of *Rinedollar* v. *Flickinger,* 59 Md. 472, is cited to sustain the objection. That case was decided against the claimant on the ground that there was no distinct and explicit statement in the notice as to who was the *owner* or *reputed owner* of the building. It would not have been possible for the material men to state that Wells & Ward were the contractors employed by Mrs. Fulton, because they were not— they had been employed by her husband. The notice fully complied with the terms and requirements of *sec. 19.*

*Secondly.* Was the lien claim defective because the itemized account does not distribute among the buildings the materials furnished, and does not designate which materials were used in each structure? The contract between the builders and the material men was one entire contract and the materials were furnished as needed without reference to the particular building in which they were to be used.   In such circumstances it was impossible for the material men to know what portion of the materials was intended for the dwelling, what portion for the stable or what portion for the duck-house.   Where, as here, the contract between the builders and the material men was entire and indivisible and provided for the continuous furnishing of materials for all the structures, it would be exceedingly unreasonable to require the person who furnishes materials for all the buildings to ascertain how much of the material is placed in each house, even if such a requirement could possibly be complied with.   This Court has so decided in *Maryland Brick Co.* v. *Spilman,* 76 Md. 341.   But apart from that decision there is no provision in the mechanics' lien law which declares the lien claim defective or the lien inoperative because of a mere failure to apportion the claim when more structures than one are built.   Section *31 of Art. 63* enacts : "In every case in which one claim for materials shall be filed by the person preferring the same against two or more buildings owned by the same person, the person filing such · joint claim shall at the same time designate the amount he claims to be due him on each of said buildings, *otherwise such claim shall be postponed to other lien creditors;* and the lien of such claimant shall not extend beyond the amount so designated as against other creditors having liens by judgment, mortgage or otherwise."   A failure to apportion the claim when an apportionment ought to be made, does not defeat the claim but postpones it "to other lien creditors."

*Thirdly.* ·It is insisted that the decree is wrong because more land was directed to be sold than was necessary for the ordinary and useful purposes of the buildings.   Not only does a mechanics' lien attach to the buildings but it extends also to

the ground covered by such buildings and to so much other
ground immediately adjacent thereto and belonging in like
manner to the owner of such buildings as may be necessary
for the ordinary and useful purposes of such building.    *Code*,
*Art. 63*, *sec. 4*.    The manner in which the quantity and the
boundaries of such contiguous ground shall be ascertained is
prescribed by *secs. 5, 6, 7* and *8*.    By *sec. 5* the owner of the
land may, prior to the commencement of the work on the
building, define in writing the boundaries of the curtilage ap-
purtenant to the building and file the same with the Clerk of
the Circuit Court for the county in which the land lies, "and
such designation of boundaries shall be obligatory upon all
persons concerned."    In default of such designation by the
owner, then under *sec. 6*, "it shall be lawful for the owner
*   *   *   or for any person   *   *   *   entitled to a lien by
virtue of this article, to apply by petition in writing to the
Judge of the Circuit Court for the county   *   *   *   to
designate the boundaries;" and *sec. 7* directs what shall be
done when such a petition has been filed.    In the pending case
the owner did not designate under *sec. 5* any boundaries prior
to work being commenced on the buildings; nor did the owner
or the claimant file a petition under *sec. 6* to have the boun-
daries defined in the manner prescribed in *sec. 7*.    By *sec. 8* it
is declared that "if any proceedings shall be instituted to en-
force any lien under this article before the boundaries of the
lot, land or curtilage which ought to be appurtenant thereto
shall be designated, it shall be lawful for the Court upon ap-
plication to stay such proceedings until such designation shall
be made   *   *   *."    No application was made to the Court
under this section.    There was three opportunities open to the
owner for marking the boundaries of the curtilage which ought
to be appurtenant to the buildings, and not one of them was
availed of.    If the decree should be reversed because the
boundaries had not been designated, then the failure of the
owner to exercise a right in this particular which she ought
to have resorted to before the decree was signed, will be
treated as an error in the decree itself.    The owner's own de-

fault would then vacate the decree.    It was within the power of the owner before the decree was passed to prevent its passage until after the boundaries had been defined if she had proceeded under *sec. 8;* and her neglect to rely on the provisions of that section cannot be assigned as a valid reason for reversing the decree.    There was evidence adduced tending to prove that the whole of the tract of land owned by Mrs. Fulton was necessary for the ordinary and useful purposes of the buildings and improvements, and there was also evidence to the contrary.    The decree directed only the six acre parcel to be sold.    We cannot say there was any error in this; and the owner must be held to have waived all objection to the decree founded on the omission to demark the boundaries, because she neglected to invoke in due season the provisions of the sections to which we have alluded.

*Fourthly.* The other lien claims of the parties who were made co-defendants were not disputed and no reason has been suggested why they should not have been directed to be paid.

As respects the cross-appeal of the plaintiffs based upon the contention that *both* lots of ground should have been ordered to be sold nothing need be said other than that the two lots though contiguous are wholly distinct and the buildings are not located on the smaller parcel, nor is that parcel necessary for the ordinary and useful purposes of the buildings.

There being no error in the decree it will be affirmed with costs.

> *Decree affirmed with costs above and below.    The costs in each case to be paid by the appellant in each case.*