**HUMPHREY v. HARRISON BROS., Inc.**
No. 6402.

United States Court of Appeals
Fourth Circuit.

Argued April 9, 1952.

Decided May 2, 1952.

Samuel Gordon, Silver Springs, Md. (Marvin E. Perlis, Washington, D. C., on the brief), for appellant.

Alleck A. Resnick, Baltimore, Md. (Joseph Levin, Washington, D. C., and Jacob Kartman, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case calls for a construction of the Mechanics' Lien Law of Maryland, Article 63, §§ 1 to 33 of the Maryland Code, and particularly Section 1, 1947 Supplement to Maryland Code which provides that in the counties of Maryland, as distinguished from Baltimore City, every building erected shall be subject to a lien for the payment of all debts contracted for materials furnished for or about the same. Section 3 of the statute further provides that no person having such a lien shall be considered as waiving it by granting credit or receiving notes or other securities, unless the same shall be received as payment, or the lien is expressly waived; and Section 11 provides that if the contract for furnishing the materials is made with any person except the owner of the lot on which the building may be erected, the furnisher of the materials shall not be entitled to a lien unless within sixty days after furnishing the same, he shall give notice in writing to the owner of his intention to claim a lien. Sections 17 and 18 provide for the filing of the lien in the office of the clerk of the Circuit Court for the county, and the maintenance by the clerk of a mechanics' lien docket in which he shall record a description of the property affected and the name. Section 19 specifically provides that every claim shall set forth the name of the claimant, the owner of the building, and the contractor, when the contract was made by the claimant with the contractor; also the amount claimed and the kind of materials furnished, the time when they were furnished and the locality and size of the building. Section 21 provides that if the claim shall be filed against two or more buildings owned by the same person, the claim shall designate the amount claimed to be due on each of the buildings, otherwise the claim shall be postponed to other lien creditors and the lien shall not extend beyond the amount designated as against other lien creditors. Section 32 provides that Article 63 shall be construed and have the same effect as laws which are remedial in their nature.

The controversy relates to a lien claim of Harrison Brothers, Inc., a wholesale plumbing and supply house located in Washington in the District of Columbia, for plumbing and heating supplies sold on open account to Alexander Green for installation in 135 houses erected on a tract of land in University Hills, Chillum District, Prince George's County, Maryland. The material was supplied and installed by Green at the rate of $1250 per house under a single contract of March 21, 1950 between Green and James Humphrey, the owner of the land and the builder of the houses.

Prior to the execution of the contract, Green arranged with Harrison to purchase the necessary material to enable him to perform his contract with Humphrey and 90 per cent. of the supplies needed for the job were actually purchased from Harrison. Prices were named by Harrison at the beginning of the operation but there was no written or oral contract between Harrison and Green fixing the prices or binding the parties to a sales agreement for the entire project; and the goods were bought on open account as needed during the ensuing months, and payments on account were made from time to time. In August, 1950 the prices for plumbing and heating supplies had risen 40 to 50 per cent. over those prevailing in March, and the goods subsequently supplied by Harrison to Green were billed at the new prices. Although Green was under a firm contract at the time to supply each house with the needed material for $1250, Humphrey, the owner and builder of the houses, advanced the contract price by $150 per house to help meet the emergency. In every instance the invoices of Harrison showed that the goods were sold to Green for use on the University Hills project.

During the progress of the work Green got behind in his payments so that on January 25, 1951 he was indebted to Harrison in the sum of $8396.76 for goods installed in the houses on the University Hills project. On that date Harrison served a notice of a claim for a lien on 29 houses erected

by Humphrey in blocks K and J in the development. The lien was recorded in the clerk's office of the county on January 29, 1951. The claim as filed was somewhat in excess of the sum of $8396.76, which is now accepted by the parties as the correct amount. All of the goods listed in the claim were furnished to the project between November 27, 1950 and January 11, 1951, and it is conceded that the claim was filed in due time.

When the notice of the claim was served and recorded. Green was still engaged in the performance of his contract for the 135 houses and the work on the 29 houses in blocks K and J was still incomplete; and some of the materials purchased from Harrison by Green for the contract was on the site of the work awaiting installation. Green was engaged on the job until May, 1951.

Additional facts to which the appellant attributes special significance are that although all the materials for which the claim was filed were installed in the houses in the University Hills project, none of the materials (except a very small amount) was installed in the 29 houses in blocks K and J; and that when the claim was made Humphrey had paid Green for all the material furnished and work done in those houses. It was explained by claimant's attorney in the course of the trial that the notice of lien was confined to the houses in blocks K and J because at the time the lien was filed claimant's attorneys were not informed as to the ownership by Humphrey of the remaining portions of the tract.

In order to test the validity of the lien, Humphrey filed suit against Harrison in the Circuit Court of Prince George's County. The suit was removed to the District Court below on the ground of diversity of citizenship and a counterclaim for the enforcement of the lien was filed, upon which trial was had resulting in a judgment establishing the validity of the lien for the sum of $8396.76. The property owner appealed to this court.

While it is now admitted that Green is indebted to Harrison in the sum of $8396.76 and that the lien was claimed in due time, it is contended that the claim is in-

valid because (1) Harrison failed to furnish the supplies at the prices named at the beginning of the transaction; (2) Harrison supplied the material on open account on the personal credit of Green and did not rely on the credit of the buildings or the right to assert a lien against them; and (3) the materials specified in the claim were not installed in the houses in blocks K and J against which the lien is asserted, but in other houses in the project against which no claim has been filed, and therefore the lien as to the latter houses has been waived and, under the Maryland decisions, may not now be allowed against the houses in blocks K and J.

There is no shadow of substance in the first two contentions. The evidence clearly shows and the judge found that Green had no binding contract with Harrison for the purchase at fixed prices of all materials needed for the job. Although all the material was purchased for the University Hills project, each purchase was a separate transaction, and Harrison was within its right in raising the prices in August 1950 in accordance with the rising market.

It is equally clear that the extension of credit by the supply house to the contractor for materials to be used in the houses in the project did not prohibit the creation of a lien. Not only is it provided in Section 3 of the statute that a person having a lien does not waive it by granting credit or receiving notes or other securities unless the same shall be received as payment, but it has been held by the Court of Appeals of Maryland that it is no defense to a mechanic's lien that there was no contract between the supply man and the owner or credit given to the owner, or that the materials were furnished on the credit of the contractor and not on the credit of the buildings. Sodini and Leiter v. Winter, 32 Md. 130, 134; Blake v. Pitcher, 46 Md. 453, 465; Bounds v. Nuttle, 181 Md. 400, 406, 30 A.2d 263.

In Sodini and Leiter v. Winter, 32 Md. 130, 133–134, it was said:

"* * * The lien may be expressly waived, and the question, whether it was waived in this case, was presented

by issues taken on the sixth and eighth pleas, but the law provides that no person having such lien shall be considered as waiving the same by granting a credit or receiving notes or other securities unless the same be received as payment, or the lien be expressly waived. In a case like the present, of a material man furnishing materials to a contractor to be used in the erection of a building, the law contemplates a contract of purchase between these two, and that credit may be given to the latter, and whilst there is no contract, express or implied, between the former and the owner, or credit given to the owner, yet the law provides a lien upon the building as a security for the material man in case the contractor fails to pay for the materials, and this is done without affecting the liability of the contractor on his contract of purchase, which still exists. Indeed, it was the liability to, and frequency of, loss sustained by mechanics and dealers in consequence of the employment of a middle man or contractor which induced the Legislature to give a lien on the building. Such being its character, and such the provisions of law for its enforcement, the mere fact that the materials were furnished on the credit of the contractor and not on the credit of the building, is not, in our opinion, either a waiver or an extinguishment of the lien."

Again in Bounds v. Nuttle, 181 Md. 400, 406, 30 A.2d 263, 266, it was said:

"* * * It may be unfortunate that they did not have the advice of competent counsel, but their ignorance of law is no excuse. If their failure to protect themselves against an impecunious contractor causes them to have to pay twice for materials, it is their own fault. The mechanic's lien law was passed to cover just such a situation and to protect material men. The theory of it is that the owner gets the benefit of the materials, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials." .

The more important question in the case is whether the lien is invalid because the materials on which it is based were not installed in the houses against which it is asserted, but in other houses in the project. The appellant relies particularly on the decisions in J. W. Wilson & Son v. Wilson, 51 Md. 159 and Nickel v. Blanch, 67 Md. 456, 10 A. 234, in which supplies were furnished to a group of houses and subsequently some of them were formally released from the lien of the supply man. Under these circumstances it was held that the lien could not be maintained against the remaining houses for materials furnished to the released houses, and that under the statute the burden of proof was upon the lienor to designate the houses for which the materials were delivered and used. A distinguishing factor in the present case is that none of the houses in University Hills have been released by the claimant and consequently a lien might have been asserted against all the houses when the lien in suit was filed. That right is now lost, except as to the houses in blocks K and J, through the lapse of time, but there was no release or waiver of the lien as to any of the buildings.

It is far more significant to point out that the force and effect of the cited cases has been greatly weakened by subsequent decisions and that it is now the established law of Maryland, as to the counties, that when materials are furnished to a multiplicity of houses comprised in a single project, it is not essential to the validity of the lien claim that the furnisher show in what houses specific materials were used, or indeed that the materials were actually used upon the project if they were purchased for and delivered to the site of the work. This rule is applied whether the material man deals directly with the owner, or sells the supplies

to a builder who in turn contracts with the owner to place the material in the buildings. See Maryland Brick Co. v. Spilman, 76 Md. 337, 25 A. 297, 17 L.R.A. 599; Fulton v. Parlett & Parlett, 104 Md. 62, 64 A. 58.

In Maryland Brick Co. v. Spilman, supra, bricks were furnished by the manufacturer to the owner under a contract to supply all the bricks needed in a single project for the erection of 47 houses on contiguous lots. In construing the contract and the coverage of the lien for an unpaid balance on the goods, the court said, 76 Md. at pages 341–342, 343, 25 A. at page 298:

"* * *. In Lyon & Gribble v. Logan, 68 Tex. 521, 525, 5 S.W. 72, Stayton, J., delivering the opinion of the court, says: 'When materials have been furnished under a single contract for buildings erected in two or more contiguous lots owned by the person to whom the material is furnished, we see no reason why the lien should not attach to all the lots, and it would be exceedingly unreasonable to require the person who furnishes material, in such a case, to ascertain how much of the material is placed in each house. This is a matter under the control of the owner of the property improved, and, if he does not see proper to make separate contracts for material to be used in each lot, he cannot be heard to say that a lien does not attach upon all the lots upon which the material is used. This rule operates no hardship on the owner of the property, or persons who purchase from him with notice of lien. If the former, owning contiguous lots, desires to affect them severally with a lien only for the material furnished for buildings or other improvements on each, he should so make his contract as to enable the materialman to know how much of his debt each lot is responsible for. So long as he treats such lots as one property, by making one contract for material to be used on all of them, without designating what part of the material is to be used on one lot or another, so long may the material man treat the lots as one piece of property in fixing his lien upon it. A purchaser buys with his eyes open, and, if he voluntarily purchases property which he knows is incumbered, he cannot complain if it is subjected in his hands to the payment of the debt for which its former owner has made it responsible.'

* * * * * *

"It has been very earnestly contended by the appellees that the case of J. W. Wilson & Son v. Wilson, et al., 51 Md. 159, and Nickel and Wedekind v. Blanch and Codd, 67 Md. 456, 10 A. 234, heretofore decided by this court, conclusively determined the law of this case. The facts, however, of each particular case must determine the propriety of the application of the principles of law which ought to govern in such case, and in neither of the cases just quoted are the facts the same or similar to those to be found in the record of this appeal."

In Fulton v. Parlett & Parlett, supra, the same rule was applied where a group of buildings was erected under a contract between the owner and a builder, and supplies were procured by the latter continuously as needed under a single contract with the lien claimant. It was held that the lien claim was not defective because it did not designate the amount claimed to be due on each of the buildings. The court said, 104 Md. at page 69, 64 A. at page 60:

"* * * Where, as here, the contract between the builders and the materialmen was entire and indivisible, and provided for the continuous furnishing of materials for all the structures, it would be exceedingly unreasonable to require the person who furnishes materials for all the buildings to ascertain how much of the material is placed in each house, even if such a requirement · could possibly be complied with. This court has so decided in Maryland Brick Co. v. Spilman, 76 Md. [337] 341, 25 A. 297, 17 L.R.A. 599. But, apart from that decision,

there is no provision in the mechanic's lien law which declares the lien claim defective or the lien inoperative because of a mere failure to apportion the claim when more structures than one are built. Section 21 of art. 63 enacts: 'In every case in which one claim for materials shall be filed by the person preferring the same against two or more buildings owned by the same person, the person filing such joint claim shall at the same time designate the amount he claims to be due him on each of said buildings, *otherwise such claim shall be postponed to other lien creditors;* and the lien of such claimant shall not extend beyond the amount so designated as against other creditors having liens by judgment, mortgage or otherwise.' A failure to apportion the claim, when an apportionment ought to be made, does not defeat the claim, but postpones it 'to other lien creditors'."

The doctrine of Maryland Brick Co. v. Spilman, supra, was also approved in Maryland Brick Co. v. Dunkerly, 85 Md. 199, at page 212, 36 A. 761, where it was said that if materials are furnished by a supply man under contract for a number of houses as an entirety, it is not important into which houses the materials go—all are subject to the lien; and that if the defense is made, as in J. W. Wilson & Son v. Wilson and Nickel v. Blanch, supra, that the materials went into houses which had been released from the lien, the burden of proof is not upon the lienor, as held in J. W. Wilson & Son v. Wilson, but on the owner of the property. As we have shown, there was no release of the lien as to any of the houses in the pending case.

The facts of the pending case meet the requirement, which obtains when materials are supplied for the erection of a number of separate buildings on contiguous lots, that the project which must have been treated by the parties as an entirety in order to give rise to a lien on all the houses for all the materials supplied. As we have seen, the contract between the owner and the contractor in this case expressly provided for the installation of the plumbing and heating fixtures in all of the houses; and the arrangement between contractor and the lien claimant covered the purchase of material for the project as a whole. The evidence is uncontradicted that Harrison furnished prices to Green at the beginning of the transaction, and the latter has contended that the prices were intended to cover all the material that would be needed. Moreover, all the materials were taken to the site from time to time as needed, and all the bills showed that the goods were intended for and charged to the University Hills project.

There is enough under the Maryland cases to make the lien effective against all the houses and to relieve the lienor of the unreasonable burden of designating the specific material which entered each building. It is not necessary that there be a binding contract between the contractor and furnisher for all the materials if the parties in their dealings with each other treat the project as a single enterprise and the goods are delivered continuously as needed during the building operation.

The indivisible character of such a transaction was shown by Judge Alvey in Trustees of the German Lutheran Church, &c. v. Heise & Co., 44 Md. 453, in holding that the right to take the lien should date from the last item in an account which covered numerous items of material delivered during a building period of several months. The court said, 44 Md. at pages 469–470:

"The lien law * * * speaks of the contract for furnishing work or materials to the builder, or other person than the owner; but we do not understand from this that it is incumbent upon the claimant to establish the fact that there was an *express* antecedent contract made with respect to the exact quantity of work or materials to be done or furnished by him. In the absence of evidence of such express contract, the character of the account, the time within which the work was done or the materials were furnished, and the object of the work or materials, may afford proper grounds for the presumption that the

work was done or the materials were furnished with reference to an understanding from the commencement that such work or materials should be done or furnished, if required by the builder; and in such case, it is from the last item in the account that the notice, and the time within which to take the lien, should date. If this were not so, in every case where there is no express contract, the mechanic or material man would be under the necessity of taking several liens during the progress of a single building."

This holding has been reaffirmed in subsequent cases. See, Caltrider v. Isberg, 148 Md. 657, 130 A. 53, where materials were furnished continuously but without express antecedent contract by the lien claimant to a builder for use in the erection of two houses on adjoining lots for the owner, and the claim was filed against both buildings without apportionment. See also, Brunt v. Farinholt-Meredith Co., 121 Md. 126, 130, 88 A. 42; Gill v. Mullan, 140 Md. 1, 13, 116 A. 563. This holding conforms to the intention of the mechanics' lien law of Maryland which expressly provides, Art. 63, Sec. 32, that it shall be construed as a law remedial in nature. Blake v. Pitcher, 46 Md. 453, 464; Caltrider v. Isberg, 148 Md. 657, 668, 130 A. 53.

The judgment of the District Court is affirmed.