THE MARYLAND BRICK COMPANY OF BALTI-
MORE CITY *vs.* GEORGE L. DUNKERLY AND
OTHERS.

*Mechanics' Liens—Time of Filing—Materials Supplied at Intervals
Under Continuous Contract—Materials Not Used in the Build-
ings—Release of Part of the Property—Waiver of Lien.*

A material man contracted to supply a builder with bricks for the erec-
tion of twenty houses at certain prices, no definite quantity being
stipulated for. The bricks were supplied at intervals from Novem-
ber to May following, and the next delivery was in August. In May
bricks were ordered and delivered for paving purposes, at a differ-
ent price from either of those named in the contract. The lien
claimed was filed within six months after the August delivery.
*Held,*

1st. That the bricks, with the exception of those ordered for paving
purposes, were all supplied under one continuous contract, and the
claim was filed in due time, under Code, Art. 63, sec. 23.

2nd. That the paving bricks were furnished under a separate contract,
and cannot be allowed as part of the lien claimed, having been sup-
plied more than six months before the lien was filed.

It is not necessary for a lien claimant to show that the articles supplied
by him were actually used in the construction of the building, pro-
vided it be shown that under the contract they were furnished for
that purpose.

Where there is an entire contract between material man and builder
for the supply of materials for the erection of a number of houses,
and after some of the materials are furnished, the material man re-
leases from his lien claim some of the houses, he cannot claim a
lien against the other houses for materials actually used in the
houses so released, but the burden of showing that the materials
were so used rests upon the parties seeking to avoid the lien, and in
the absence of such proof the material man is entitled to maintain
his lien against the other houses for the materials supplied by him.

It was claimed on one side and denied on the other that the material
men in this case had signed a paper waiving their liens as to a cer-
tain house. This paper was lost. *Held,* upon the facts, that its ex-
ecution was established by a preponderance of proof.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), dismissing the bill of complaint filed by the appellant to enforce a lien claim against certain houses and lots of ground. The claim of the Brick Company was filed for record on February 23rd, 1888, and the bill of particulars showed that the last delivery of bricks was made on August 24, 1887. The next preceding delivery was on May 30. The lien claim of Swain & Banks was filed on December 28, 1887, and the bill of particulars showed deliveries of lumber on June 2, 6, 9, 29 and 30.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*David Stewart*, for the appellant.

The appellant filed its lien claim against seventeen houses in Baltimore City; it afterwards released eleven of these houses for valuable consideration; but being unable to collect its proportionate claims of $190 each from the owners of the remaining six houses, it filed a bill to enforce its lien by the sale of the houses themselves. Two defences were made. First. A general defence as to all the houses, that the lien was filed too late; and second, a special defence as to one house, that the lien had been released, though the release had been lost.

1. The lien was properly filed in due time and is a valid subsisting lien. It is true that the appellant waited as long as it could safely wait before filing its lien, but there is no pretence that there was any bad faith in this delay. It greatly injures a builder to have a lien filed against his houses; it hurts his credit, and often precipitates his failure; and it is quite generally deemed a hardship upon him if the material man files his lien before this is absolutely necessary.

The uncontradicted testimony of George M. Bokee, president of the appellant corporation, is that he made a verbal agreement to furnish all the bricks for the seventeen houses, and that in accordance with that agreement all the

bricks were delivered, to be used in the erection of the said houses, as the account shows, and that the houses were duly finished and the contract completed.    There is no evidence of any other or additional contract.    But the appellees contend:  (1). That the original contract terminated on March 29, 1887, and that the bricks, shown in the succeeding seven items of the bill, were not delivered under the original contract, and that therefore this lien, in order to cover the great mass of the claim, should have been filed on or before September 29, 1887, whereas it was filed on February 23, 1888.  The appellants respectfully insist that no good reason has been or can be shown for excluding the seven items referred to.    The only reason alleged is that in three of these items (not the last ones) an additional dollar per thousand bricks over the original contract price is charged, and that therefore these bricks could not have been delivered under the original contract.    The orig-ignal contract was that *all the bricks for the erection of seventeen houses should be furnished by the appellant;* plainly the builder might have changed his plans a dozen times and have taken other kinds of bricks at different prices without destroying that continuity of the contract, which is all *Spillman's case* requires.    But even if these three items should be excluded, there is still an item of August 24, 1887, which is charged up at the contract price, and to which no such objection can be made.    All that the law requires is that there should be a continuous undertaking to furnish and deliver materials for the erection of seventeen houses and the bricks were furnished for all of the seventeen houses generally.    *Maryland Brick Co.* v. *Spillman,* 76 Md. 337, 344.    Mr. Bokee testifies that the contract filed is a bill " for bricks furnished according to contract, for the erection and completion of seventeen houses, and that the company had agreed in the fall of 1886 to furnish the same to Dunkerly for the erection of these houses."

(2). A second reason is given for excluding the item of August 24, 1887, namely, that there is no proof that these

bricks were used in any of the six houses now proceeded against.    It is maintained that the burden of proof is on the appellant to show this.    The contrary is expressly decided in *The Maryland Brick Company* v. *Spillman*, 76 Md. 337, 344, in which case the Court, commenting on the cases of *Wilson* v. *Wilson*, 51 Md. 160, and *Nickle* v. *Blanch*, 67 Md. 457 (which cases are relied upon by the appellee), states broadly that the material man need never prove in which houses the bricks were used, but, if such proof is ever relevant, the burden lies upon the builder, who has the means at his command of showing to what use the bricks have been put.    See *Watts* v. *Whittington*, 48 Md. 353, 357 ; *Greenway* v. *Turner*, 4 Md. 296.

No release or waiver by the appellant is proved.    The burden of proof is upon the defendant to prove this defence.    A good deal of testimony is given as to a waiver of lien having been given for the Sanderson house, but there is no direct evidence at all that this waiver (if it existed) was signed by the Maryland Brick Company, excepting the testimony of H. W. Crowl.    He says the release was signed by Swain & Banks and by the Maryland Brick Company, but this is emphatically denied by Mr. Banks. Both these witnesses are unimpeached, and the testimony of one neutralizes that of the other, so that the defendant fails in establishing his case.    The testimony of all the other witnesses is too indefinite to establish so important a fact as a release.

Only five cases are cited in the appellee's brief in support of the appelle's case, as follows : (1).  *Trustees* v. *Heise*, 44 Md. 470, 453.    The language quoted from this case in the appellee's brief, is language used concerning a case where there was no express contract, or several of them.    And there was explicit evidence of separate and distinct contracts. (2).  *Watts* v. *Whittington*, 48 Md. 353, 356, shows that distinct contracts must be proved as a matter of defence.    (3). *Ortwine* v. *Caskey*, 43 Md. 135, is cited as authority that the burden of proof is on the appellant to show that the

bricks furnished on August 24, 1887, were furnished to some of the *six* houses *involved in this proceeding.* That case simply decides that the appellant must show that the bricks were furnished to some of the *seventeen* houses *covered by the lien,* which has been done. (4). *Wilson* v. *Wilson,* 51 Md. 160, and (5), *Nickle* v. *Blanch,* 67 Md. 459, decide that if some houses have been released no items of bricks delivered to the released houses can be inserted in the lien claim against the others. The question of the burden of proof was not raised in these cases, as there was abundant proof of the facts; and in discussing these cases this Court has expressly decided that the burden of proof is on the defendant to show that any particular bricks were delivered to a released house. (See *Maryland Brick Co.* v. *Spillman,* 76 Md. 337, 344).

*George R. Gaither, Jr.* (with whom was *Daniel L. Brinton* on the brief), for the appellees.

In the fall of 1886 and during the year 1887, George L. Dunkerly undertook the construction of seventeen houses on the north side of Mosher street, in Baltimore City, and three houses adjacent on Carey street. Some of these houses were sold to the different appellees prior to the end of December, 1887. On December 28th, 1887, a mechanics' lien was filed against a number of these houses by Swain & Banks, for lumber alleged to have been furnished for their construction, and on February 23rd, 1888, a mechanics' lien for the bricks furnished for the said houses, was filed by the Maryland Brick Company of Baltimore City, the appellant in this cause. It is a matter of note that these were the only liens filed against these houses. The appellee, Mary E. Sanderson, purchased one of the houses on Mosher street, on September 1st, 1887, paying cash in full for the same, and receiving at the time, as she sets forth in her answer, a bond against liens and a waiver of liens upon her house and lot, signed by all the parties furnishing materials for the same. The bill in equity for the enforcement of the lien of

the Maryland Brick Company, against the four houses mentioned in the bill of complaint, was not filed until the 22d of March, 1892, and the cause was brought to trial upon the pleadings and evidence on January 14th, 1896. On that day the Circuit Court of Baltimore City signed a decree dismissing the bill of complaint, and from that decree this appeal has been taken.

The appellees rely upon two grounds of defence to this bill for the enforcement of the lien referred to, and the appellee, Mrs. Mary E. Sanderson, also contends for a separate defence, as set forth in her answer of a waiver of liens, received by her as to the lot of ground of which she is the owner.

1st. The lien claim of the appellant, the Maryland Brick Company, was not filed within the period required by the statute. The bill of particulars of the claim show charges for 529,175 bricks furnished at frequent periods from November 20, 1886, to March 29, 1887. After that date there are only the following items:

| | | | | | | |
|---|---|---|---|---|---|---|
| April | 21. | To 9,500 Arch, at | 9.... ........ | $85 | 50 |
| " | 29. | " 2,700 " " | 9............. | 24 | 30 |
| May | 10. | " 900 " " | 10............. | 9 | 00 |
| " | 16. | " 2,000 " " | 10............. | 20 | 00 |
| " | 30. | " 1,000 " " | 10............. | 10 | 00 |
| | | " 500 Salmon, at 9 | ............. | 4 | 50 |
| August 24. | | " 1,350 Red and Sal., at 9 | ........ | 12 | 15 |

The lien claim was not filed until February 23, 1888, just within the six months from the last item of August 24, 1887. It is clear, therefore, that unless the account set forth in the lien claim is a continuous contract, that every item is barred by the terms of the statute, except the last one amounting to $12.15. The only testimony regarding the furnishing of any of these bricks is, that the agreement was a verbal one, and is testified to by Mr. George M. Bokee, the president of the appellant company. He there states " that the prices were agreed upon before the bricks were ordered, and that those prices were $9 for run of kiln, $17.50 per 1,000 for

sand pressed, and $25 for dust pressed delivered at buildings." This is the only testimony upon the subject, as Dunkerly testifies that the agreement was made with Thomas E. Thompson for him, and Thompson says that he made no contract either in his own name or on behalf of Mr. Dunkerly. When Mr. Bokee was interrogated, moreover, as to the last 3,900 bricks ordered in May, he states that these bricks were evidently used for paving, and that he judged so from the *additional price charged*. It will be seen that the price charged for all the arch bricks furnished in May was $10, instead of $9, the contract price ; and the president of the appellant company, with whom the contract was made, states that they were especially ordered for paving purposes at that additional price.

It is, therefore, clear from the testimony of the appellant's witness, who alone testifies as to these charges, that these items in the bill of particulars were furnished under a *separate order or contract* from the original one about which he had testified. There being separate orders or contracts comprising the items upon which this lien is based, it is the settled law of this State that the presumption of a continuous contract is at an end, and that the lien can only be laid for each particular charge. It will be noted, moreover, that the last order was for bricks for paving purposes, and not for the construction of the houses. " Where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption of a continuous contract will arise, and the right to take the lien must date from the time of furnishing the different parcels of materials, and not from the last item in the account." *Trustees* v. *Heise*, 44 Md. 470. Again, in the case of *Waters* v. *Whittington*, 48 Md. 353, this doctrine was fully affirmed by the opinion of JUDGE MILLER. The facts in that case were practically identical with the one at bar. There were various items for common

bricks, and then followed the items for paving bricks, at a considerable interval of time, as in this case. The Court said that in such a case the items could only apply for each particular charge, and that such was the settled law of this State. That the proof shows separate and distinct orders in the present case is uncontradicted, and is in fact admitted by the evidence of the appellant. It is therefore submitted that the lien claim was filed too late, and should be disregarded for every item except the one of August 24, 1887.

2d. That as to the last item, there is no proof whatever that said bricks were used in any of the houses against which the lien claim was filed, and therefore this lien claim cannot be enforced. It is manifest that if for any reason this charge of August 24th, 1887, does not constitute a valid lien upon the property, it cannot operate to make the entire claim effective, even though every item in the claim should be proven to be parts of a continuous contract. As has been stated before, without this item the claim is clearly filed too late for its enforcement. Whatever evidence may be sufficient to invalidate this item, must necessarily destroy the whole force and effect of the whole lien claim, even if otherwise valid.

The evidence shows that there were seventeen distinct houses and lots of ground on Mosher street, and three on Carey street, for which these bricks were alleged to have been furnished. It is admitted by the president of the appellant that the appellant, on May 17th, 1887, waived its lien for these bricks on one lot on Carey street; on July 2d, 1887, as to the lot on the northeast corner of Mosher and Carey streets, and on January 18th, 1888, as to a lot on Mosher street, on north side, 12th east from Carey street. All of these releases were made prior to the filing of the lien claim by the appellant. Now, although it is undisputed, that under ordinary circumstances, where a lot of materials is furnished to a number of houses, it is not necessary for the lien claimant to show that any of the materials furnished were used in particular houses, or even used at all, never-

theless, a contrary rule of law arises the moment that re-
leases are executed by the material man for any of the
houses. It is then incumbent upon him to prove that the
materials furnished were used in some one of the houses
against which the lien has been filed and to which it is ap-
plicable. It is manifest that such should be the burden of
proof, for if the materials used are furnished to a house
which has been released of all lien by the party's own act,
it is manifestly inequitable to burden other houses with the
charge of materials for which the claimant has expressly
agreed to make no charge. The *onus* of proving that any
portion of the material furnished was delivered within the
six months immediately preceding the filing of the lien claim,
is upon the claimant. *Ortwine* v. *Caskey*, 43 Md. 139. It
follows as a necessary corollary from this proposition, that
the burden of proof is upon the claimant to prove that the
materials were furnished to one or more of the houses which
he seeks to charge with his lien. By his own act of releas-
ing certain houses from the burden of his claim, he has
made it uncertain as to whether materials delivered on the
premises are used in the houses which are released from his
lien, or in those which might be charged with it. It is
plainly his duty, therefore, to show that the materials were
furnished for the unreleased houses, if he seeks to fasten his
claim upon them. In *Wilson* v. *Wilson*, 51 Md. 160, this
Court says : " The burden of proof is upon the complainants,
who are the appellants, to show satisfactorily the delivery
of these materials, and their use in some one of the houses
sought to be charged with the lien, and also to bring the
whole account filed within date, to show that the delivery
was under the same original and continuing contract under
which the previous materials had been furnished. One
house had been released from the lien, and the effect of that
release was to release the other buildings from any charge
or liability in consequence of materials being furnished for
it, whether before or after the release." In *Nickel & Wede-
kind* v. *Blanch & Codd*, 67 Md. 459, this Court again ex-

pressly affirms *Wilson* v. *Wilson.* That case decides that where the proof shows that the bricks were not used for the house on Broadway, but for the houses on St. Joseph street, and a release was executed for the houses on St. Joseph street, that release extinguished the lien claim against the house on Broadway.

In the case at bar there is *no evidence* whatsoever to show in which houses, or for what purposes, this order of August 24, 1887, was used. Mr. Bokee so testifies and George L. Dunkerly does not know. On the other hand, Mr. Sanderson positively testifies that the brick and woodwork upon the house purchased by Mrs. Sanderson was all furnished in May, 1887, long prior to the date of this item. It is therefore submitted, that there being no evidence whatsoever that any of the bricks referred to in the item of August 24th, 1887, were furnished to or used in the particular houses upon which the lien claim was sought to be charged, that under the law of this State said item should be disregarded, and the lien claim thereby rendered of no force or effect.

As to the lien claim of Swain & Banks, one of the defendants in this cause. It is necessary, in order that this case may be finally disposed of, to state the contentions of the appellees as to this other lien. The appellees insist that this lien is also void for the same reasons which have been hitherto presented regarding the claim of the appellant, the Maryland Brick Company. The lien claim was filed for record on December 28, 1887. The entire amount of the lien is $3,652.01. The testimony in the case shows that there is no proof of the last item of June 30, 1887. The whole claim, therefore, rests upon the one item of June 29, 1887, which is as follows: "June 29. To 166 ft. 4-4 yellow pine stock culls dressed (1¾), $2.90; to hauling, .50—$3.40."

This item of $3.40 is relied upon to sustain this large claim, which would otherwise be completely barred by the delay in filing the claim. "Yellow pine stock culls dressed"

is the only item of this character in the bill of the entire account. The amount is so small that it was manifestly only to be used for one of the houses, and as George C. Goldman, one of the witnesses for the plaintiff, testifies, would be used for shelving in a cupboard. Being only in amount used for a small purpose and probably for one house, it certainly must have been a separate order from all the other charges for lumber which were furnished, according to Mr. Banks' testimony, by verbal agreement made in November, 1886, which was simply made upon a list of prices furnished at the time to Dunkerly. This list of prices was never produced or testified to, and it is not possible to imagine that there could have been a price given for yellow pine stock culls dressed of 1¾ cents per foot, when such an insignificant order as the one given could not have been contemplated by the parties regarding the erection of twenty houses. But if this special material was not contemplated in the original transaction, it is manifest that Swain & Banks should have known it to be a separate order, and had no right to rely upon it as a part of the original contract. The lapse of time from the original orders was moreover a circumstance which should have placed them upon inquiry as to the legal effect of such an order. It is therefore contended, that this order, from its special character and prices, and from the charge for " hauling " (all the other charges, including delivery), proves the separate character of this order, and so prevents it from being a part of the original continuous contract. Such being the case, this order must stand upon its own footing under the decisions above quoted, and consequently it can have no efficacy to aid the charges in the original bill, which were filed after the time required by the statute for acquiring a lien. Then, again, this charge is fatally defective for the same reasons heretofore given, because there is no evidence that this special order was not used for some one of the houses for which releases were given by Swain & Banks.

*Edward C. Eichelberger* filed a brief for Swain & Banks, appellees.

PAGE, J., delivered the opinion of the Court.

The questions in this case arise upon the bill of the Maryland Brick Company to enforce a mechanics' lien against the four houses and lots mentioned in the proceedings. The firm of Swain & Banks claim a lien prior in time to that of the Brick Company, and the members of that partnership are made parties. The validity of both these claims is disputed, and forms the subject of the contentions of the parties.

1st. As to the claim of the Maryland Brick Company. It is insisted the lien was not filed within the period required by the statute ; that is, within six months after the materials were furnished. Art. 63, sec. 23; Code.

The bill of particulars shows that all the bricks charged for were delivered more than six months before the filing of the lien except the single item of August the twenty-fourth, and it is contended that the materials charged in this and the six preceding items were furnished under other and distinct contracts than were those of the other items of the bill. The account shows that the Brick Company began to furnish bricks on the 20th of November, and continued to do so, at short intervals up to the thirtieth of May, when there was an interval of nearly three months, until the next delivery, on 24th of August. Now, in the case of *Trustees* v. *Heise*, 44 Md. 470, it was held that in the absence of evidence of an express antecedent contract made with respect to the exact quantity of materials or work to be furnished or done " the character of the account, the time within which the work was done or materials were furnished, and the object of the work or materials may afford proper grounds for the presumption, that the work was done or the materials were furnished with reference to an understanding from the commencement, that such work or materials should be done or furnished if required by the builder ;"

o

and in such case it is from the last item in the account that the time within which to take the lien should date. But, on the other hand, when the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material and not from the last item. Here the account shows a long interval between the date of the last item and of those that precede, and can therefore furnish no presumption that the belated items were furnished under a continuous contract. On the contrary, the long interval from 30th May to the 24th August seems to warrant an inference directly to the contrary. We are not without proof, however, as to the contract. Mr. Bokee, the president of the Brick Company, testified that the contract was to furnish the brick for the erection and completion of seventeen houses on Mosher street and three on Carey. There was no stipulation as to the number of bricks, but the prices were fixed at $9, $17.50 and $25 per thousand, according to the kind used. The account shows that on the 10th, 16th and 30th of May bricks were furnished at ten dollars per thousand, and the proof shows that this charge was so made because these bricks were " selected for paving purposes " and were specially ordered for those purposes. There is nothing in proof to show any " understanding from the commencement" that the bricks costing ten dollars per thousand should be furnished. The original contract called for bricks at $9, $17.50 and $25 per thousand, and it could not be, that under this a charge could have been made at ten dollars per thousand. It would seem, therefore, that these bricks were furnished under a separate and distinct contract, and cannot properly be allowed as a part of the lien.

These observations apply only to the bricks charged for at ten dollars. But in May there were delivered 500 salmon, and on 24th August thirteen hundred and fifty red and salmon at the contract price. We find nothing in the

record to rebut Mr. Bokee's statement that these were de-
livered in pursuance of the antecedent contract, to furnish
brick to erect and complete the twenty houses. These two
items must therefore be regarded as parts of the running
account and charges for material that it was understood
from the beginning were to be furnished. The lien claim
was filed within six months from the date of the last item
and was therefore in time.

It is not requisite to entitle the Brick Company to main-
tain its lien for it to show that the bricks were actually used
in the buildings, provided it be proved that under its con-
tract with the builder they were furnished to be used in the
erection of the buildings. We need not repeat what has
been heretofore said by this Court upon this point, in a re-
cent case, when the subject was fully discussed. *Maryland
Brick Co.* v. *Spillman*, 76 Md. 343.

2nd. The claim of Swain & Banks. The proof clearly
establishes that the materials furnished by this firm were so
furnished under one antecedent contract, for one entire pur-
pose, viz., for seventeen houses on Mosher street and three
on Carey, and were delivered continuously, month by
month, and day by day, down to the thirtieth of June,
1887. The lien was also filed within six months from the
date of the last item. It is objected, however, that it does
not appear that the items in June, 1887, were not applied
to the houses on Carey street, which the appellees claim
were released in the preceding March. Even if the proof
justified the conclusion, that these houses were then re-
leased, we do not think the fact would impair the validity
of this lien. The contract of Swain & Banks related to all
the twenty houses as an entirety, and therefore, under the
rulings in *Spillman's case*, *supra*, it is not important into
which house the materials went. If it were shown, that
after the release of the Carey street houses, these materials
went into them, the case would be brought within the deci-
sions in the cases of *Wilson* v. *Wilson*, 51 Md. 160, and
*Nickle* v. *Blanch*, 67 Md. 460. If materials were furnished
and used in the Carey street houses after they had been

released there could be no lien maintained against them therefor, and as a consequence of this there could be no lien for such materials upon the residue of the houses. But the burden of the proof to establish such a condition of fact, in a case like this rests, not upon the lienor, but upon the owner of the property, or whoever may be seeking to avoid the lien. Here there is an entire contract to furnish certain materials for certain houses, and if such were furnished, the lien, if the claim is properly filed, must be maintained against all the houses, unless it be affirmatively shown that the material man has done some act or entered into some agreement by which he has directly or indirectly waived his rights.

It is also contended, as to the property of Mrs. Mary E. Sanderson there was a waiver of lien by the Brick Company, and also by Swain & Banks. Mr. Thompson testifies that when one of the houses was sold to her, Mr. Gaither, her counsel, required a waiver of all liens, and also a bond of indemnity, and that in pursuance of this demand, there was obtained from "all the lien claimants" a waiver as to the house she was about to purchase. This evidence is supported by the testimony of Mr. Sanderson, Mr. Gaither and Mr. Crowl. Mr. Sanderson, who is the husband of Mrs. Sanderson, testified, " we exacted from Mr. Thompson a waiver of all liens and also a bond of indemnity," and Mr. Gaither stated, there was a waiver of liens given in response to his requirement, apparently signed in a proper manner "and filled up in the proper places," but he is unable to recall the names signed to it. Mr. Crowl, the surety on the bond of indemnity, swears positively that he knows the waiver was signed by the Brick Company and Swain & Banks, and " all the parties who had the right of lien." A copy of the bond is contained in the record, and there is proof of the loss of the waiver and the inability of the parties to produce it after diligent search.

To meet this proof, there is testimony of Mr. Bokee, who stated he could not tell from memory on which houses his company had waived liens, but he didn't think it possi-

ble it could have waived liens against any of the houses for which " liens had been filed, because it was his custom, either outside or in the office of the company," to make a memorandum whenever a waiver had been signed, and record it on the daily blotter; that he had examined the blotter and found no record of a waiver of the lien on this lot. Mr. Banks is also positive there was no such waiver, because his firm kept a plat of the houses and when there was a waiver as to any of them they were marked by a clerk, on the plat, " released;" and such plat did not show such a release as is now claimed. He seems to have no independent recollection, however, about the matter; he cannot remember whether he " ever liened " the houses on Carey street; thinks he did not, but was settled with for them, but can't tell how or when. Mr. Dunkerly, while he cannot state on what property, testified he had gone around with various waivers; and that it is customary when new buildings are sold before the time within which liens may be filed has expired to exact bonds of indemnity and also waivers of liens. In this state of the case we are of opinion the waiver of lien on this house is established by a preponderance of evidence. Neither Mr. Banks nor Mr. Bokee is able to speak from his own recollection. Their statements are founded not upon the existence of memoranda, but upon the absence of them. On the other hand, the witnesses who support the waiver speak with positiveness from their own memory, and their statement is in accord with the probability that Mrs. Sanderson, as a reasonably prudent purchaser, would be likely to make a demand for a waiver as well as a bond of indemnity before consenting to part with her money.

It follows from what has been said, the decree must be reversed and the cause remanded for a new decree in accordance with the views herein expressed.

*Decree reversed and cause remanded,*
*the costs to be paid by the ap-*
*pellees other than Sanderson.*

(Decided February 24th, 1897.)