## CHICKASHA COTTON OIL CO. v. STANDARD LBR. CO.

No. 25335.   Nov. 26, 1935.

Melton & Melton, for plaintiff in error.

Shirk, Danner & Phelps and Charles E. Earnheart, for defendant in error.

PER CURIAM.   This action was commenced in the district court of Custer county, Okla., by the Standard Lumber Company, defendant in error, against Mitchell-Carter Gin Company and Chickasha Cotton Oil Company for recovery of the sum of $1,550 as against Mitchell-Carter Gin Company and for the foreclosure of materialman's lien. The defendant Mitchell-Carter Gin Company defaulted and judgment was rendered against it for the account, and a further judgment establishing its lien as a first and prior lien on the property involved and foreclosing the same, from which judgment the Chickasha Cotton Oil Company has appealed.

The parties to this appeal will be referred to as plaintiff and defendant in the order in which they appeared in the trial court.

Plaintiff alleges in its petition that Mitchell-Carter Gin Company was the owner of certain 3.05-acre tract located in Custer county, Okla., on which it was engaged in the construction of a cotton gin; that during the course of construction plaintiff entered into a contract with the owner to furnish certain materials for use in the construction of improvements on said lands; that it did furnish the materials and they were so used; that on December 27, 1930, the defendant Mitchell-Carter Gin Company executed its promissory note to plaintiff in the amount of $1,550, representing the balance due upon the account; that no part of the note was paid, and that on January 30, 1931, and within four months after furnishing the last of said materials, plaintiff filed its materialman's lien, a copy of which is attached to the petition. The petition alleged, and the exhibit so shows, that in the lien statement filed the property was described as follows, to wit: 3.05 acres out of the northwest quarter (N. W.¼) of section seventeen (17), township twelve (12) north, range fourteen (14) west, Custer county, and adjacent to the city of Weatherford, Oklahoma.

The petition further specifically describes the 3.05-acre tract by metes and bounds and states that the lien statement is thereby amended so as to show the full and complete description of the property by metes and bounds as described in the petition.

The defendant Chickasha Cotton Oil Company filed its answer containing a general denial, and admitting the defendant Mitchell

& Carter Gin Company was the owner of the real estate described in the petition. It also denied that plaintiff entered into a contract with the owner, Mitchell & Carter Gin Company, or furnished materials to it, and denied that plaintiff filed its lien claim within the time provided by law. The answer alleged that the lien was filed against "Mitchell & Carter," whereas the correct name of the owner was Mitchell & Carter Gin Company. The answer further states that on July 19, 1930, Mitchell & Carter Gin Company executed a mortgage to A. R. Pannell to secure an indebtedness in the amount of $21,000, which mortgage covered the property involved and was recorded on August 4, 1930, and that prior to maturity the note was indorsed and the mortgage assigned to the defendant Chickasha Cotton Oil Company. The answer alleged that the mortgage was prior and superior to any lien of plaintiff and specifically denied that the plaintiff had a valid lien.

Plaintiff filed its reply denying that Chickasha Cotton Oil Company was an innocent holder for value of the mortgage and alleging that it took the same with full knowledge of the lien claim.

The Liberty National Bank of Weatherford was a party defendant below and filed its answer stating that it held a mortgage on the property involved as its only security for certain indebtedness, and that the defendant Chickasha Cotton Oil Company had a lien upon other property not involved in this action sufficient to secure its indebtedness, and prayed for judgment marshaling assets and requiring Chickasha Cotton Oil Company to exhaust its other security before enforcing its lien against the property herein involved.

The defendants Mitchell & Carter Gin Company and A. R. Pannell defaulted at the trial and the remaining parties waived a jury and tried the cause to the court. At the conclusion of the trial the court rendered a judgment in favor of plaintiff and against Mitchell & Carter Gin Company in the amount of $1,550, with interest, attorney's fees and costs, and rendered a further judgment establishing and foreclosing plaintiff's lien as a first and prior lien in the amount of $1,521.50 and interest at ten per cent. from December 27, 1930, and attorney's fees in the amount of $150. Certain items aggregating $28.50 for materials, which the court found did not go into the construction of the gin property, were deducted from the amount for which the lien was claimed. The court did not render judgment foreclosing either of the mortgages, but indicated in the journal entry of judgment that the amounts due thereon should be thereafter determined by the court. The only question involved in the appeal is the validity of plaintiff's materialman's lien, and this embraces the question of the sufficiency of the lien statement and the question of whether the lien was filed within the statutory time.

Defendant's first proposition in its brief is that the materials were not furnished under a contract with the owner of the land, and that the lien statement was insufficient to meet the requirements of the statute. In support of this proposition defendant urged that the lien statement recites that the contract for the materials was made with "Mitchell & Carter," whereas the land was owned by Mitchell & Carter Gin Company, and it is contended that the lien statement could not be amended as respects the name of the owner after expiration of the time in which the lien might be filed. Defendant's eighth assignment of error is "error of the court in permitting the plaintiff to amend its petition and lien statement as against rights of the Chickasha Cotton Oil Company." Defendant's mortgage was executed in July, 1930, while the gin was in the course of construction and defendant took the mortgage with constructive if not actual knowledge of unaccrued lien rights. It was therefore not an innocent purchaser as against any lien claimant, and could have been in no wise misled or prejudiced by the discrepancy in the name of the owner as set out in the lien statement. In fact, the time for filing plaintiff's lien admittedly did not expire until long after the mortgage was executed and the full amount of the loan paid out to the mortgagor. While the lien statement did recite that the contract was with the owner, "Mitchell & Carter," yet the lien statement embodies a copy of a promissory note in the amount of $1,550, which note recites that it is given for materials to construct a gin at Weatherford, Okla., and is signed "Mitchell & Carter Gin Company by V. A. Carter, President." Furthermore, there was identified by the county clerk and introduced in evidence the record of all the owners of land situated in the quarter section in which the gin was built. No other owner appears whose name in any wise resembles Mitchell & Carter Gin Company or Mitchell & Carter. We fail to see how anyone could have been misled by the discrepancy in the lien statement, but certainly it was proper to permit the statement to be amended in this respect where the rights

of no innocent third parties were prejudiced thereby. Section 7478, C. O. S. 1921, in force at the time the lien rights were fixed, permits any lien statement to be amended in the furtherance of justice, except as to the amount claimed. In the case of Whitefield et al. v. Frensley Bros. Lumber Co., 141 Okla. 44, 283 P. 985, the lien statement as originally filed failed entirely to set out the name of the owner of the land. After the suit was filed to foreclose the lien and after expiration of the time within which to file the lien, plaintiff was granted leave to amend its petition and amend its lien statement so as to show the name of the owner. Defendant in that case contended that the lien was void and could not be amended after expiration of the time allowed by law for filing the lien, so as to show the name of the owner. In support of this contention two early Kansas cases were cited, the same being Blattner v. Wadleigh, 29 P. 165, and Newman v. Brown & Co., 27 Kan. 117. In referring to the two Kansas cases cited this court said:

"It may be observed that Blattner v. Wadleigh, supra, and Newman v. Brown & Co., supra, from the Supreme Court of Kansas, were both cases construing the mechanic's lien law of Kansas in effect prior to adoption in that state of the section allowing the amendment of mechanic lien statement, from which our section 7478, C. O. S. 1921, was adopted."

Defendant cites the Kansas case, Newman v. Brown & Co., supra, as authority for the proposition that the name of the owner cannot be supplied in the lien statement by amendment, but as pointed out in Whitefield v. Frensley Bros. Lumber Co., supra, this decision was based on the early Kansas statute before adoption of the section providing for amendment of lien statements, which provision was later adopted by this state. The decisions of this court, permitting such amendments to be made, are uniform and numerous. The evidence sufficiently shows that the contract was in fact made with Mitchell & Carter Gin Company, and after disposing of the objection to the amendment of the lien statement, nothing remains to support defendant's contention that the lien was invalid because of the fact the materials were not furnished under a contract with the owner of the real estate.

Defendant's second contention was that if the lien statement was sufficient, nevertheless, it was not filed within the time provided by law. The lien statement was filed January 30, 1931, and being a lien of an original contractor it was incumbent upon plaintiff to show that some of the materials used in the construction of the gin were furnished on or after September 30, 1930. On September 27, 1930, plaintiff furnished 164 1x4s 10 feet long, which were used in the construction of shelves in the gin house. Defendant's contention is that this was the last item of materials furnished by plaintiff for use in the construction of the gin, and that any materials thereafter furnished by plaintiff were not furnished under its contract; that some of the materials furnished later were not used in the construction of the gin property, and that those which were so used were furnished after the gin was completed and after it was determined to make additional improvements not contemplated in the original contract. There was no written contract between the parties and no specifications furnished. Representatives of the gin company asked for and were given quotations on the price of various kinds of lumber and materials to be used in the construction of the gin, and commenced ordering the same as needed. Construction commenced in February, 1930, and had progressed sufficiently so that the gin started operation on September 9, 1930. Defendant admits, however, that materials up to September 27, 1930, were a part of the contract and a part of the original construction contemplated by the parties. There is evidence that on October 2nd 10 2x4s and 10 1x12s were used in building a burr box and in constructing guards or rails around the belting in the gin (R. 74-79); that on October 3rd, 5 pairs of 8-inch strap hinges were furnished and used in the construction of the burr box (R. 56-58); that on October 14th, some 1x4s were sold and used in building a partition in the cotton house (R. 87), and that on October 27th some tin flashing was furnished and used to cover the burr and seed conveyor, to prevent burrs and seeds from falling out of the conveyor. Several other items of material furnished during October, 1930, were shown to have gone into the construction of a trailer for a truck, a tool box for the carpenter's tools, and in repairing the gin company's office off of the premises; these were excluded as lienable items by the trial court. It appears evident that the burr box located outside of the gin house but under the conveyor, the banisters constructed around the belts for safety purposes, the partition in the cotton house and covering for the burr and seed conveyor, were all necessary or proper in the completion of

the construction of the cotton gin. If the parties considered these items as a part of the same general account and as being furnished for the same general purpose as the materials theretofore furnished, then they form a part of the original contract and postpone the commencement of the four-month period in which the lien might be filed. If, on the other hand, the parties considered their original contract entirely completed prior to September 30, 1930, and they were not furnished for the same general purpose and on the same account, but were purchased under a new and separate contract or contracts, then they would not postpone the time for filing the lien. There is no evidence in the record that these items were carried as separate and distinct accounts, but, on the contrary, the evidence indicates they were ordered out on the same general account pursuant to the original arrangement between the parties. Furthermore, after making several payments on the account and reducing the balance thereof to $1,550, which balance included the items in question, the gin company executed its promissory note to plaintiff for the balance of the account in the amount of $1,550. The entire account was thereby settled as to amount, and this shows that the parties did consider the items in question as a part of the general account and as a part of the entire contract.

In the case of Joplin Sash & Door Works v. Oklahoma Presbyterian College for Girls et al., 36 Okla. 547, 129 P. 40, a subcontractor's lien was involved. There was a written contract covering certain specified mill work that was to be furnished. It was later found that additional materials not included in the contract were needed. In that case the court said:

"No new contract was made, either between the owner and the contractor, or the latter and the subcontractor; simply an order for additional materials. This, being received, was filled, and a reasonable charge made for the materials so furnished. These additional materials were of the same kind or similar to those included in that contract. They in effect supplemented the contract. All related to the one contract, entered into the one building, were furnished during the progress of the work and at a time relatively near the furnishing of the first ordered materials. The transactions involved one settlement, and were in a way connected and continuous in their nature. The last items were furnished before the expiration of 60 days from the date of furnishing the last material under the original list. Extras were contemplated, though not specifically provided for in the

original contract. The mere fact of furnishing additional materials subsequent to filling the original order is not sufficient of itself to constitute the transactions as separate and distinct, or independent contracts, within the meaning of the statute limiting the time for filing liens. Herein we think the trial court erred. What the contract in fact was, and whether the contract thus formed is entire and continuous, presents a mixed question of fact and law. Page v. Bettes, 17 Mo. App. 366; Phillips on Mechanics' Liens, sec. 325. And while the finding of the court was that, as a question of fact, there were separate contracts, we feel that the court erred in concluding that the transactions, though separate in point of time, constituted, within the meaning of the statute, separate and distinct or independent contracts.

"The total value, according to the testimony, of the materials furnished by the subcontractor, was $2,247.30. Of this amount the written contract included $2,206, leaving a balance to be supplied of but $41.30. That items of the same character amounting to this small sum and intended for the same general use should be left open and made the subject of a separate contract, either with the present claimant or a third party, will not be presumed."

In the above case this court quoted from Phillips on Mechanics' Liens, paragraph 229, as follows:

"But when work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire sale, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract."

It appears that the materials furnished during October, 1930, were furnished for the same general purpose and that they did not involve separate and distinct transactions or separate matters of settlement. Under the rule of the above case the furnishing of these materials would be considered as a part of the original contract.

Sherbondy et al. v. Tulsa Boiler & Machinery Co. et al, 99 Okla. 214. 226 P. 564, involved a materialman's lien for materials furnished under a verbal contract to furnish materials for the construction of a refinery. The contract was indefinite as to the amounts and character of materials to be furnished, and it was contended that materials ordered out consti-

tuted separate contracts. The court, however, said:

"The rule is settled in this jurisdiction that where, as in this case, material is furnished to be used for the same general purpose, as for the construction of a building, though the material be ordered at different times, yet if the separate parts form an entire whole, and are so connected as to show that the parties regarded the separate items of material furnished at different times, as being a part of the entire account, and not constituting separate accounts, the furnishing of said material in this manner will be considered as a single contract."

To the same effect are Clark, Trustee, v. Oklahoma Electric Co., 144 Okla. 21, 288 P. 935; Wass v. Vickery, 158 Okla. 227, 13 P. (2d) 142; Fox Rig Co. v. Bell, 128 Okla. 300, 263 P. 119.

Defendant complains of error on the part of the trial court in refusing its offer of proof that certain materials were furnished for repairs, and that other materials were ordered after construction of the gin was completed and when it was determined that they were necessary or useful. Such testimony if admitted would not have changed the result, as under the rule of the above cases there was competent evidence of materials furnished and used in the construction of the gin within four months prior to filing of the lien, which constituted a part of the original contract. The errors complained of, therefore, were harmless, and do not constitute grounds for reversal.

In this jurisdiction it is well settled that in a law action, where a jury has been waived and trial is had to the court, the Supreme Court will not disturb the findings and judgment of the trial court because of insufficiency of the evidence, if there is any evidence reasonably tending to support such findings and judgment. We are of the opinion that there was such evidence in this case, and finding no prejudicial error in the record, the judgment is hereby affirmed.

The Supreme Court acknowledges the aid of Attorneys Stanley D. Campbell, Edward H. Chandler, and Harry Campbell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Stanley D. Campbell and approved by Mr. Edward H. Chandler and Mr. Harry Campbell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, and CORN, JJ., concur.