T. DAN KOLKER, INC. *v.* SHURE ET UX.

[No. 105, October Term, 1955.]

*Decided March 12, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*H. Richard Smalkin* and *Arnold Fleischmann,* with
whom were *Morton J. Hollander, A. Frederick Taylor*
and *Smalkin, Hessian, Martin & Taylor* on the brief, for
the appellant.

*Saunders M. Almond, Jr.,* with whom were *Jenifer &
Jenifer* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree granting the enforce-
ment of part of a mechanic's lien, and denying enforce-
ment of the remainder of said lien.

In the latter part of 1953 Arthur A. Shure and Fay
Shure, his wife, appellees, entered into a contract with
Mr. Albert Miller, President of Georgetown Construction
Company, (Miller), a body corporate, for the construc-
tion of a home on their lot for $32,500.00. As a result
of that contract Mr. Miller approached the appellant,
T. Dan Kolker, Inc., (Kolker), which operated a lumber
yard in Baltimore City. On October 30, 1953, Mr. Kol-
ker, President of Kolker, and Mr. Miller entered into a
written contract for mill work in the amount of $2,587.51
to be furnished for the Shure dwelling.

About the time this written contract was made, Mr.
Kolker and Mr. Miller discussed the rough lumber to
be furnished on this job. Mr. Kolker testified that he
told Mr. Miller that he would sell him the rough lumber
at the "going price" at the time and that Mr. Miller
agreed to buy from him whatever rough lumber he needed
for the Shure house at the "going price". Mr. Miller
testified that he told Mr. Kolker that he would buy all
his rough lumber from him provided his deliveries and

price "were right" at the time the material was desired. He further said that he only agreed to buy the rough lumber from Mr. Kolker if the price was satisfactory, and that if the price was not low enough Mr. Kolker could not compel him to buy it.

When asked by the Court why a definite contract was entered into for the mill work and not for the rough lumber, Mr. Miller replied: "You see, lumber, there aren't too many millwork shops, and a residence of this type was special millwork involved, and you have got to have time to make it up. While, if you need rough lumber, you can call up any yard and say, 'Have you got this and this size in stock,' and, 'When can you deliver it?'" He further said that the order for the rough lumber was more or less a "bait" for the millwork. He also said: "* * * my procedure was, and the instruction to the superintendent was on the job when he needed material, he would see me in the morning, and tell me. I would go to the phone, and I called up T. Dan Kolker, and say, 'Have you got this and this in this size?' If they didn't have it, I would say, 'Forget about it.' If they had it, 'What is the price.' I might call up one or two other companies, particularly Pulaski who were working on a very narrow margin, and so on. I mean—but Kolker always got first preference, because I felt I had an obligation to him because we made a deal on the millwork. He had first choice." The invoices were made out by Kolker to "Georgetown Construction Co. & A. Miller, (Shure Residence, Stevenson Lane and Anton Farms Road)." The items of millwork and lumber were carried as a single account on the invoices and on Kolker's books. It was admitted that all the materials listed in the liens claimed on these invoices were delivered to the Shure property.

Kolker extended credit to Miller and began supplying materials on the Shure job on December 10, 1953, and charged the millwork and rough lumber in one and the same account. On the invoices sent to Miller these items were not differentiated. Kolker continued to de-

liver material to Miller without any payment until June 25, 1954, at which time Kolker claimed a balance owing of $4,730.30. Miller had sent several checks to Kolker which were returned by the bank for lack of funds. On July 14, 1954, Miller sent Kolker a check on a Towson bank for $401.37 which was paid, and when credited to the Miller account, left a balance of $4,328.93.

In June, 1954, Miller, on account of financial difficulties, abandoned the contract with Shure. After that time the construction of the house was done under the personal supervision of Mr. Shure. On July 14, 1954, and again on July 16, 1954, Kolker gave proper notice by registered mail of its intention to file a mechanic's lien in the amount of $4,329.33 against the Shure dwelling. Attached was an itemized invoice. The Shures, appellees, admit that they received this notice of intention to file on July 17, 1954. Kolker, pursuant to said letters, on September 17, 1954, filed the mechanic's lien for $4,329.33. Deducting the payment of $401.37 from $4,730.30 leaves a balance of $4,328.93 and not $4,329.33. The appellees, Shures, having failed to pay that lien, Kolker, the appellant, brought this suit in equity for its enforcement. During the trial of the case it was found that an item charged in the amount of $19.38 had been returned. The amount therefore claimed by the appellant is $4,309.55.

The chancellor was of the opinion that there was a contract for the millwork but no contract for the rough lumber. Accordingly a decree was signed ordering the balance of the payment for the millwork in the amount of $2,078.41, without interest, in full payment and discharge of the mechanic's lien. From that decree appellant appeals.

Code, 1951, Article 63, Section 11, provides: "If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall

not be entitled to a lien unless, within sixty days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien."

From the account filed it appears that rough lumber was delivered to this project from January 5, 1954, up to and including May 25, 1954. The last two items of rough lumber delivered were on March 18, 1954, charged at $10.48, and on May 24, 1954, charged at $19.80. This last delivery of $19.80 was within the sixty day period required for notice of intention to file the lien.

Of course, the mechanic's lien law was passed to protect material men. This Court has laid down the rule that it is to be construed in the most liberal and comprehensive manner in favor of mechanics and material men. *Blake v. Pitcher,* 46 Md. 453, 464; *Real Estate Co. v. Phillips,* 90 Md. 515, 527, 45 A. 174; *Fulton v. Parlett,* 104 Md. 62, 64 A. 58; *Caltrider v. Isberg,* 148 Md. 657, 668, 130 A. 53. In the late case of *Bounds v. Nuttle,* 181 Md. 400, 406, 30 A. 2d 263, it was said: "The mechanic's lien law was passed to cover just such a situation and to protect material men. The theory of it is that the owner gets the benefit of the material, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

All parties agree that there was a contract for the millwork. The first question to be decided is whether there was a contract for the rough lumber delivered.

Mr. Miller said he agreed to buy all the rough lumber from the appellant provided its deliveries and prices were right at the time the material was desired. He further testified that he called up, inquired as to price, ordered the lumber, and it was delivered. Sometimes when a vague offer and acceptance have been acted upon

and thus construed by the parties, the original uncertainty in the agreement is thereby removed. When the offer to supply goods is accepted by a promise to buy from the offeror all the promisor may need of the goods in question within a certain time at a fixed price, and the goods are later purchased at a fixed price and delivered, the contract has been executed. In *German Lutheran Church v. Heise,* 44 Md. 453, a material man sought to enforce a mechanic's lien against the church edifice for bricks furnished the contractor in the erection of the church. Judge Alvey said in that case: "The objections to the claim are, first, that the materials were not furnished under a continuous contract, and, as nearly all the materials were furnished more than sixty days before notice given of claimants' intention to claim a lien, under the Code, Art. 61, sec. 11, and more than six months before the time of filing the lien claim for record, under the 23rd section of the same Article of the Code, therefore the lien is not good, except for the materials actually furnished within those periods; * * *. * * * The account, as stated and filed with the claim for lien, and which is proved to be correct, shows that the materials were continuously furnished within the period stated, during the progress of the building. The items are very numerous, and deliveries were made at short intervals of a few days, as the materials were wanted at the building; and this course of dealing continued during the entire period covered by the account.

"The lien law, Code, Art. 61, secs. 1, 11, speaks of the *contract* for furnishing work or materials to the builder, or other person than the owner; but we do not understand from this that it is incumbent upon the claimant to establish the fact that there was an *express* antecedent contract made with respect to the exact quantity of work or materials to be done or furnished by him. In the absence of evidence of such express contract, the character of the account, the time within which the work was done or the materials were furnished, and the object of the work or materials, may afford proper grounds for

the presumption that the work was done or the materials were furnished with reference to an understanding from the commencement that such work or materials should be done or furnished, if required by the builder; and in such case, it is from the last item in the account that the notice, and the time within which to take the lien, should date. If this were not so, in every case where there is no express contract, the mechanic or material man would be under the necessity of taking several liens during the progress of a single building."

From the account filed here it appears that rough lumber was delivered during the year 1954 on January 5th, 6th, 24th and 28th, February 4th, 15th, 17th and 24th, March 18th and May 24th. We are of opinion that the above quotation applies to the facts in the instant case and not the following qualification set forth in *German Lutheran Church v. Heise, supra:* "But where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item in the account." All this quotation was repeated in substance by Chief Judge Boyd in the case of *Brunt v. Farinholt Co.*, 121 Md. 126, 131, 88 A. 42.

In *Maryland Brick Co. v. Dunkerly*, 85 Md. 199, 36 A. 761, a material man contracted to supply a builder with bricks for the erection of twenty houses at certain prices, no definite quantity being stipulated. The bricks were supplied by the material man at intervals from November to May. In May bricks were ordered and delivered to the contractor for paving purposes at a different price from those named in the original contract. The Court held that the bricks which were delivered up until May were all supplied under one continuous contract and that the claim was filed in due time. The situation as

to the bricks delivered from November to May seems comparable with the facts in the instant case. The paving bricks, however, were held to have been furnished under a separate contract and not supplied within the necessary period for the lien to attach.

The case of *Humphrey v. Harrison Bros.*, (4th Cir.), 196 F. 2d 630, related to a mechanic's lien claim by Harrison Brothers, a wholesale plumbing and supply house, for plumbing and heating supplies sold on open account to Green, the contractor, for installation in 135 houses in Prince George's County, Maryland, for Humphrey. Judge Soper said in that case in sustaining the mechanic's lien: "Prior to the execution of the contract, Green arranged with Harrison to purchase the necessary material to enable him to perform his contract with Humphrey and 90 per cent of the supplies needed for the job were actually purchased from Harrison. Prices were named by Harrison at the beginning of the operation but there was no written or oral contract between Harrison and Green fixing the prices or binding the parties to a sales agreement for the entire project; and the goods were bought on open account as needed during the ensuing months, and payments on account were made from time to time. In August, 1950 the prices for plumbing and heating supplies had risen 40 to 50 per cent over those prevailing in March, and the goods subsequently supplied by Harrison to Green were billed at the new prices. Although Green was under a firm contract at the time to supply each house with the needed material for $1250, Humphrey, the owner and builder of the houses, advanced the contract price by $150 per house to help meet the emergency. In every instance the invoices of Harrison showed that the goods were sold to Green for use on the University Hills project. * * * It is not necessary that there be a binding contract between the contractor and furnisher for all the materials if the parties in their dealings with each other treat the project as a single enterprise and the goods are delivered continuously as needed during the building operation." Judge Soper in

that case quoted from *German Lutheran Church v. Heise, supra,* and concluded with the following: "This holding conforms to the intentions of the mechanic's lien law of Maryland which expressly provides, Art. 63, Sec. 32, that it shall be construed as a law remedial in nature. *Blake v. Pitcher,* 46 Md. 453, 464; *Caltrider v. Isberg,* 148 Md. 657, 668, 130 A. 53." See also *Chickasha Cotton Oil Co. v. Standard Lumber Co.,* 175 Okla. 15, 52 P. 2d 816; *Consolidated Cut Stone Co. v. Seidenbach,* 181 Okla. 578, 75 P. 2d 442; *Smith v. Stroehle Machinery & Supply Co.,* 109 Colo. 460, 126 P. 2d 341; *McCrady-Rodgers Co. v. Nenoff,* 155 Pa. Super. 555, 39 A. 2d 260.

Applying the law above stated to the facts in the instant case, we are of opinion that, as all the rough lumber was furnished for the same purpose, the construction of the Shure home, and even though it was delivered at different times, these deliveries were so connected together to show that the parties contemplated that all of the deliveries formed one entire matter for settlement. *District Heights Apts. v. Noland Co.,* 202 Md. 43, 52, 95 A. 2d 90. The requirements of the statute are satisfied whether deliveries are treated as made under a separate contract for the rough lumber, or under a single contract for the millwork and rough lumber as the parties apparently regarded it.

Of course, where the time allowed for the filing of a mechanics' lien has begun to run, the claimant for the lien cannot thereafter extend the time within which the lien may be filed or the sixty day notice given, by doing or furnishing small additional items and thereby fixing a new date from which the period must again begin to run, where the real intention is to save or restore a right which is already lost or where the additional work is done or additional material furnished without the knowledge, request or consent of the owner. *District Heights Apts. v. Noland Co., supra,* 52. There is no contention here that the rough lumber item delivered on May 24, 1954, charged at $19.80 was delivered for that purpose. It was used and not returned. As this delivery was

made in good faith at the request of the owner for the purpose of completing the contract, the period for filing the lien and giving the notice of intention to claim a lien ran from the furnishing of that material irrespective of the value thereof. *Harrison v. Stouffer,* 193 Md. 46, 65 A. 2d 895; *District Heights Apts. v. Noland Co., supra,* 53.

Mr. Nathan Frankfurt, the credit manager for Kolker, testified that he received the check on the Towson bank in the amount of $401.37 from Miller on July 14, 1954. Attached to that check was an adding machine tape which indicated that that check was to be applied to the payment of two invoices of much later date than those for which the bad checks that Kolker was holding had been applied by Miller. If this check of $401.37 had been applied as Miller indicated on the tape it should be applied, it would have paid the rough lumber item in the amount of $19.80 of May 24, 1954, which was the only rough lumber item delivered and included within the necessary sixty day period for notice, although there were later deliveries of millwork. However, Mr. Frankfurt testified that as the former checks from Miller had been returned on account of insufficient funds, he called the Georgetown Construction Company. A Mr. Lumston, who always answered the telephone there, advised him that Mr. Miller was not in. He said that he told Mr. Lumston that the former checks had not been paid and that as he "had a check drawn on the Towson bank for $401.73, paying for some items, but in as much as I had checks that came back on earlier invoices, that all I could do was to accept that check as payment on the account." No testimony was offered to contradict that statement of Mr. Frankfurt.

The appellees claim that this check in the amount of $401.37 should have been credited to the items specified by Miller. Of course, it is true as a general rule that the debtor has the right, if he so elects, to make the application of payments in the first instance and, if he omits to do so, the creditor may make the appropriation

If neither make any appropriation, the law appropriates the payment according to the justice of the case and usually to the payment of the earliest and most onerous debt. *Neidig v. Whiteford,* 29 Md. 178, 185; *Safe Deposit & Trust Co. v. Woodbridge,* 184 Md. 560, 566, 42 A. 2d 231; *Carozza v. Brannan,* 186 Md. 123, 126, 46 A. 2d 198. In *German Lutheran Church v. Heise, supra,* 471, as to payment of money by the debtor to the creditor, it is said: "* * * but if there is no special appropriation by either party, *and there is a current account between them,* as was the case here, the law makes an appropriation according to the order of the items of the account, the first item on the debit side of the account being the item discharged or reduced by the first item on the credit side. *Pemberton v. Oakes,* 4 Russ. 154."

The chancellor was of the opinion that the application by Miller of the bad checks to former items was avoided because those checks were not paid and that the check for $401.37 should be credited to the millwork account and not for the last items purchased. Here, Miller attempted to make this application on the strength of bad checks. Just as the law will not allow additional items to be delivered for the purpose of extending the time for filing the claim and giving the notice of intention to file a lien, it will not allow a debtor to apply payments based on bad checks for the purpose of preventing the lien and notice. Furthermore, as herein set forth, the credit manager for Kolker notified Miller's office that he would apply the check on the account. This testimony is not contradicted. If this application by Kolker was not satisfactory, Miller could have demanded the return of the $401.37 check, which was not done. We are, therefore, of opinion that the check in the amount of $401.37 was properly applied on the account by Kolker. It is not necessary, therefore, for us to decide in this case whether the payment of the item of $19.80 delivered on May 24, 1954, would prevent the sixty day period of notice from starting at that date.

As above stated, the chancellor allowed no interest in this case. It was further said in the case of *German Lutheran Church v. Heise, supra,* page 472: "Interest is not charged or claimed in the account on which the lien was taken, and hence it is contended that none should be allowed. But we think, upon principle and analogy, inasmuch as the lien became a claim of record, enforceable without stay or condition, interest should be allowed from the time of filing the lien claim for record. From that time, therefore, interest will be allowed on whatever may be ascertained to be the amount due." It was also stated in *Hensel v. Johnson,* 94 Md. 729, 737, 51 A. 575, that interest should have been allowed on a mechanic's lien from the time of filing the lien claim for record. See also *Brunt v. Farinholt Co., supra,* 138. Compare *Pasarew Construction Co. v. Tower Apts.,* 208 Md. 396, 118 A. 2d 678. In the instant case, interest was claimed and the mechanic's lien claim was filed September 17, 1954. Interest will be allowed from the date of the filing of the claim.

For the reasons hereinbefore given, we are of opinion that the chancellor was correct in finding the mechanic's lien contract valid as to the millwork but are of the opinion that he erred in not holding the mechanic's lien valid as to the rough lumber delivered.

*Decree affirmed in part and reversed in part, and ordered that the appellees pay to the appellant the sum of $4,309.55, with interest from September 17, 1954, and costs.*